EL PUEBLO DE PUERTO RICO, demandante y recurrido, *v.* RAMÓN R. ANDALUZ MÉNDEZ, demandado y peticionario.

*Número:* CC-95-134 *Resuelto:* 30 de junio de 1997

*Juan B. Soto Balbás*, de *Mercado & Soto*, abogado del peticionario; *Carlos Lugo Fiol, Procurador General*, y *Marta Maldonado Maldonado, Procuradora General Auxiliar*, abogados de El Pueblo.

EL JUEZ PRESIDENTE SEÑOR ANDRÉU GARCÍA emitió la opinión del Tribunal.

Contra el acusado Ramón Andaluz Méndez se presentaron acusaciones por infracción al Art. 87 del Código Penal, 33 L.P.R.A. sec. 4006, a saber, imprudencia crasa y temeraria al conducir un vehículo de motor. Ante nos alega que se le privó de su derecho a presentar prueba a su favor en la vista preliminar e impugna la determinación de causa probable para acusar por no habérsele permitido presentar prueba exculpatoria.

I

El 1ro de julio de 1994, en horas de la noche, el aquí peticionario, Ramón Andaluz Méndez, quien es miembro de la Policía, manejaba un vehículo oficial de la Uniformada por la avenida Ponce De León en Santurce. El vehículo no estaba rotulado. Mientras manejaba dicho vehículo, impactó el vehículo manejado por el Sr. Ramón R.

Rodríguez. Junto con el Sr. Ramón R. Rodríguez iban como pasajeros Isabel Lugo y Marina Reyes Buitrago, quienes fallecieron como consecuencia del impacto. Del testimonio del señor Rodríguez se desprende que luego de salir de una Iglesia Bautista ubicada en el Paseo Covadonga se disponía a volver al Viejo San Juan, para lo cual tenía que cruzar la avenida Ponce De León. Indicó que se detuvo frente a una señal de "Ceda el Paso" antes de cruzar la avenida. *Al no observar vehículo alguno* en su dirección intentó cruzar la intersección para tratar de llegar a la avenida Muñoz Rivera. Cuando cruzaba el segundo carril fue impactado por el auto oficial conducido por el imputado, lo cual ocasionó las dos (2) muertes antes mencionadas. Por estos hechos el Ministerio Público presentó las correspondientes denuncias por violación al Art. 87 del Código Penal, 33 L.P.R.A. sec. 4006.

Al finalizar el acto de la vista preliminar, la magistrada que la presidió determinó que no existía causa probable para acusar. Inconforme con la determinación, el Ministerio Público recurrió ante un magistrado de superior jerarquía. En la vista preliminar en alzada, celebrada ante una juez superior, el Ministerio Fiscal presentó cuatro (4) testigos.([1]) *Dichos testigos fueron confrontados y contrainterrogados por el peticionario.* Al ser sometido el caso por el Ministerio Público, el abogado de la defensa ofreció el testimonio de dos (2) testigos. En ese momento la juez que presidía el proceso se expresó del modo siguiente:

Lo que el compañero me está pidiendo es que yo determine quién dice la verdad, si los testigos del Pueblo o los testigos de la Defensa, y eso yo no lo voy a hacer en esta etapa del proceso. Yo entiendo que con la prueba que se ha presentado es suficiente para determinar causa por los delitos imputados. Y que esos testigos yo no tengo ningún reparo en escucharlos, pero yo no voy a dirimir controversias de prueba aquí porque entiendo que no es mi función. Estaría violentando todo lo que el Tribunal Supremo ha resuelto. A mi me parece que si el compañero

---

([1]) Los testigos fueron el Sr. Ramón R. Rodríguez, conductor del auto impactado, y tres (3) testigos presenciales: David Barranco Franco, Gladys Becerra y Carlos Hernández.

los quiere sentar, yo con mucho gusto los escucho, pero senci-
llamente lo único que quedaría es su testimonio consignado en
el récord como que declararon eso. Informe para mostrar causa,
Apéndice, pág. 101.

Después de presentadas las correspondientes acusacio-
nes, el aquí peticionario presentó una moción de desesti-
mación al amparo de la Regla 64(p) de Procedimiento Cri-
minal, 34 L.P.R.A. Ap. II. Adujo como razón que el
Ministerio Público no presentó prueba sobre todos los ele-
mentos del delito y, además, que no se le permitió presen-
tar testigos que declarasen a su favor en la vista prelimi-
nar en alzada.

Luego de celebrada una vista para la discusión y consi-
deración de dicha moción, el tribunal la declaró sin lugar,
resolviendo que la determinación de causa probable estaba
dentro del marco de la ley.

Inconforme con dicha resolución, el peticionario recurrió
en *certiorari* al Tribunal de Circuito de Apelaciones (Cir-
cuito Regional I) señalando como errores los mismos argu-
mentos que fundamentaron su moción de desestimación.
Dicho tribunal dictó sentencia que confirmaba la resolu-
ción recurrida. En ésta el Tribunal de Circuito de Apelacio-
nes señaló que en la etapa apelativa cualquier impugna-
ción de vista preliminar debe examinarse a la luz de "la
presunción legal de regularidad y corrección que asiste a la
determinación de causa probable para acusar a un ciuda-
dano imputado de delito" (Petición de *certiorari*, Apéndice,
pág. 28); señaló, además, que basta con que el dictamen del
magistrado se base en una *scintilla* de prueba que demues-
tre que existe prima facie causa para creer que se cometió
un delito, y que probablemente el acusado lo cometió. Por
ello, resolvió que se había cumplido con este requisito a
nivel de instancia.

El imputado recurre ante nos señalando la comisión de
tres (3) errores; el primero, la aplicación de la presunción
de regularidad y corrección de los procedimientos de deter-
minación de causa probable, lo que alegadamente lo privó

de la presunción de inocencia de la que disfruta todo impu-
tado de delito; segundo, la determinación de que sólo es
necesario una *scintilla* de evidencia para determinar causa
probable para acusar y que el imputado no tiene derecho a
presentar prueba a su favor, y tercero, la determinación de
que no permitirle al imputado presentar evidencia a su
favor no le perjudicó sustancialmente.

Considerado por este Tribunal el presente recurso, con-
cedimos un término al Ministerio Público para que mos-
trara causa por la cual no se debía revocar las sentencias
dictadas y, en auxilio de nuestra jurisdicción, paralizamos
los procedimientos pendientes ante el Tribunal de Primera
Instancia. El Procurador General ha comparecido a mos-
trar causa según lo ordenado y, estando en posición de re-
solver, procedemos a hacerlo.

## II

Es necesario analizar la naturaleza y el propó-
sito de la vista preliminar en nuestro ordenamiento
procesal. La Regla 23 de Procedimiento Criminal, 34
L.P.R.A. Ap. II, es la fuente estatutaria que regula la vista
preliminar. La función básica de esta vista está limitada a
la determinación de existencia o no de causa probable para
creer que se ha cometido un delito y que éste ha sido come-
tido por el acusado. Pretende evitar que se someta a un
ciudadano arbitraria e injustificadamente a los rigores de
un proceso criminal. *Pueblo v. Rodríguez Aponte*, 116
D.P.R. 653, 663 (1985); *Pueblo v. Opio Opio*, 104 D.P.R.
165, 171 (1975); *Pueblo v. Figueroa Castro*, 102 D.P.R. 279,
284 (1974). La vista preliminar opera en términos de
probabilidades. Su función no es establecer la culpabilidad
o inocencia del acusado, sino determinar si en efecto el
Estado tiene adecuada justificación para continuar con un
proceso judicial. De ahí que no exista una adjudicación fi-
nal de inocencia o culpabilidad en esta etapa. Tal determi-
nación se hace en el juicio. *Pueblo v. Rodríguez Aponte*,

supra, pág. 660; *Pueblo v. González Pagán*, 120 D.P.R. 684 (1988). Ahora bien, el Ministerio Público debe presentar evidencia, legalmente admisible en un juicio plenario, sobre todos los elementos del delito imputado en la denuncia y su conexión con el imputado. *Pueblo v. Rodríguez Aponte*, supra, pág. 664. La determinación de causa probable, una vez se cumple con la presentación de tal evidencia, goza de la presunción legal de corrección. *Pueblo v. Rivera Alicea*, 125 D.P.R. 37, 42 (1989). Cuando el imputado entienda que el Ministerio Público no ha cumplido con su deber, el imputado puede atacar la determinación de causa probable y rebatir la presunción de corrección, para lo cual está disponible la moción de desestimación al amparo de la Regla 64(p) de Procedimiento Criminal, *supra*, ello cuando existe *ausencia total de evidencia legalmente admisible* en cuanto a alguno de los elementos del delito o de la conexión del acusado con el delito imputado. *Pueblo v. Rivera Alicea*, supra, págs. 42–43. La vista preliminar no es un minijuicio, y una vez quedan establecidos todos los elementos del delito y la conexión del imputado con éste a base de evidencia legalmente admisible, a tenor con las Reglas de Evidencia en vigor en ese momento, se justifica una determinación de causa probable. Con la determinación del magistrado en esta etapa no se adjudica definitivamente la responsabilidad del imputado; ni siquiera queda expuesto a ser convicto. Con esta determinación, el proceso pasa para su adjudicación final, fase a la que la Constitución se refiere en particular detalle. El juicio en su fondo es el momento realmente culminante y crítico. La génesis de la vista preliminar es estatutaria, no constitucional. *Pueblo v. Rodríguez Aponte*, supra, pág. 660.

## III

A pesar de que es norma bien asentada en nuestra jurisprudencia que los derechos constitucionales que gozan los acusados no se trasladan automáticamente a las etapas anteriores al juicio, *Pueblo v. Rodríguez Aponte*, supra,

pág. 660, la Regla 23(c) de Procedimiento Criminal, 34 L.P.R.A. Ap. II, dispone, en lo pertinente:

> Si la persona compareciese a la vista preliminar y no renunciare a ella, el magistrado deberá oír la prueba. La vista será privada a menos que al comenzar la misma la persona solicitare que fuere pública. La persona *podrá* contrainterrogar a los testigos en su contra y *ofrecer prueba en su favor.* (Énfasis suplido.)

Tal regla incorpora, como parte del debido proceso de ley al cual es acreedor el imputado, el derecho de éste a presentar evidencia a su favor. No seguir este precepto significa una violación del debido proceso de ley que gobierna esta etapa del procedimiento judicial.

■ Sin embargo, en *El Vocero de P.R. v. E.L.A.*, 131 D.P.R 356 (1992),[2] expusimos el principio de que el magistrado que preside la vista puede decidir no escuchar prueba de la defensa una vez se convenza de la existencia de causa probable. *Esa discreción no es absoluta ni está acorde con el espíritu y letra de la regla que específicamente reconoce al imputado la facultad de presentar prueba a su favor.* El magistrado no puede descartar escuchar cualquier prueba que quiera aportar la defensa. Teniendo en mente que la vista preliminar no es un minijuicio, cuando se haga un ofrecimiento de prueba que por su naturaleza demuestra en forma *incontrovertida* que el imputado *no cometió el delito imputado, que cometió un delito menor o que se violaron garantías o privilegios constitucionales que justifican su exoneración en esa etapa,* el magistrado viene obligado a escuchar la prueba así ofrecida, siempre y cuando ésta permita disponer del caso en ese momento *y no requiera resolver cuestiones de credibilidad que correspondan a la etapa del juicio. Cf. Pueblo v. Rodríguez Aponte,* supra, pág. 669.

---

[2] Revocado por otros motivos por el Tribunal Supremo de Estados Unidos en *El Vocero de Puerto Rico v. Puerto Rico*, 508 U.S. 147 (1993).

 Ahora bien, lo anteriormente expuesto no debe interpretarse como impedimento o limitativo de la facultad del magistrado que preside la vista preliminar para descartar cualquier testimonio cuando, después de pasar juicio sobre éste a la luz de las demás circunstancias del caso y de la experiencia humana, razonablemente se convenza de que tal testimonio es inherentemente irreal o increíble, o cuando su contenido, así analizado, es improbable, o cuando dicho testimonio, por cualquier circunstancia, no es confiable o no goza de una razonable garantía de veracidad. Después de todo, la evidencia para encauzar al imputado es suficiente únicamente cuando, además de sostener todos los elementos del delito, *es susceptible de ser creída.* Esto es, que como cuestión de derecho, la evidencia en apoyo de tales elementos intrínsecamente permite que sea sometida a un análisis de credibilidad. *Pueblo v. Colón, Castillo,* 140 D.P.R. 564 (1996). *Pero,* "[l]a función del [magistrado] al analizar si la evidencia es susceptible de ser creída sólo requiere determinar si la evidencia *puede ser creída por una persona razonable y de conciencia no prevenida,* sin entrar a dirimir la credibilidad que amerita la prueba presentada". (Énfasis en el original.) Íd., pág. 582. En este sentido la función del magistrado en la vista preliminar respecto a la suficiencia de la prueba no es distinta a la función del juez *que preside un juicio por jurado* al resolver una moción de absolución perentoria al amparo de la Regla 135 de Procedimiento Criminal vigente, 34 L.P.R.A. Ap. II.(³)

## IV

Discutidos estos aspectos doctrinales, examinemos las actuaciones que dieron lugar a este recurso. Uno de los testigos de cargo que testificó en la vista preliminar declaró que observó que el vehículo que manejaba el impu-

---

(³) Respecto a esta última, véase *Pueblo v. Colón, Castillo,* 140 D.P.R. 564 (1996).

tado iba a exceso de velocidad, que no llevaba luces encendidas y que el impacto elevó el vehículo conducido por Don Ramón M. Rodríguez. Testificó, además, que el auto que impactó al del señor Rodríguez no se detuvo con el impacto, sino que siguió su velocidad. Otro de los testigos manifestó haber visto un carro que pasó a velocidad como un cohete y luego escuchó el impacto. El tercer testigo señaló que vio el auto que manejaba el imputado venir a velocidad y luego oyó el "bombazo", según lo describe el propio testigo.

El Art. 87 del Código Penal, *supra*, dispone:

> Cuando en la muerte ocasionada por una persona al conducir un vehículo de motor mediare imprudencia crasa o temeraria, se impondrá pena de reclusión por un término fijo de seis (6) años. ...
>
> La imprudencia crasa o temeraria es aquella de tal naturaleza que demuestre un absoluto menosprecio de la seguridad de los demás bajo las circunstancias que probablemente produzcan daños a éstos y no significa una mera falta de cuidado.

■ De una lectura del artículo vemos que la imprudencia crasa es aquella que transciende la mera falta de cuidado y que se traduce en grave menosprecio por la seguridad de los demás. No cabe duda de que la evidencia de velocidad excesiva es indicio de imprudencia crasa. El exceso de velocidad es un agente causante de accidentes, y dentro de la naturaleza del riesgo creado, está el de impactar a otro vehículo. Por lo tanto, no se cometieron los errores señalados ya que con la evidencia aportada por el Estado se puede hacer una clara inferencia de la responsabilidad criminal del imputado, por lo que la magistrada que presidió la vista en alzada estuvo justificada en determinar causa probable sin tener que escuchar otra prueba. La evidencia que pretendió ofrecer la defensa requería dirimir un conflicto de credibilidad, lo cual corresponde a las etapas del juicio.[6]

---

[6] Se pretendía sentar en la silla de los testigos al Tte. Luis Correa y al Ate. Rubio, quienes testificarían que éste fue el primer policía en llegar al lugar de los hechos; que ambos se percataron de que el "biombo" y las luces del vehículo que manejaba el imputado estaban encendidas, contrario a lo que señalaron otros

Por otro lado, la juez que presidió el proceso no se negó a escuchar la evidencia ofrecida. Ante el ofrecimiento de la versión de los testigos de defensa, dicha magistrada se limitó a manifestar, correctamente, que dicha evidencia tendía a establecer una controversia de prueba que sólo podrá dirimirse a base de la credibilidad que le mereciera al juzgador de los hechos los testigos de una y otra parte. No obstante expresó, además, "me parece que si el compañero los quiere sentar, yo con mucho gusto los escucho, pero sencillamente lo único que quedaría es su testimonio consignado en el récord como que declararon eso". Informe para mostrar causa, pág. 101. En lugar de presentar tales testimonios, la defensa se reservó todos los testigos para el día del juicio. Íd., pág. 105.

En virtud de lo anteriormente expuesto, *se confirmará la sentencia recurrida y se ordenará la continuación de los procedimientos contra el imputado Andaluz Méndez.*

La Juez Asociada Señora Naveira de Rodón emitió una opinión concurrente. El Juez Asociado Señor Fuster Berlingeri concurrió con el resultado sin opinión escrita. El Juez Asociado Señor Rebollo López disintió con una opinión escrita.

— O —

Opinión concurrente emitida por la Juez Asociada Señora Naveira de Rodón.

Concurrimos con el resultado al que llega el Tribunal. Coincidimos, además, con la opinión mayoritaria en cuanto ésta reconoce la necesidad de revaluar la norma hasta el

---

testigos. No cabe duda que tales testimonios hubiesen hecho necesario dirimir cuestiones de credibilidad, lo que corresponde a la etapa del juicio y no a la de vista preliminar. Por otra parte, esa prueba, por su naturaleza, no permitía la disposición completa del caso en esa etapa y hubiese significado la celebración de un "minijuicio" contrario a la naturaleza de la vista preliminar.

momento imperante en nuestra jurisdicción sobre el derecho de un imputado a contrainterrogar los testigos de cargo y presentar evidencia a su favor durante la celebración de la vista preliminar. No podemos suscribirla enteramente, sin embargo, puesto que ésta insiste en imponer limitaciones injustificadas al referido derecho. El derecho a la observancia de un debido proceso de ley, de naturaleza circunstancial y pragmática, ahora lo requiere.

Lo anterior se impone como corolario de la decisión emitida por el Tribunal Supremo federal en *El Vocero de Puerto Rico v. Puerto Rico*, 508 U.S. 147 (1993), que revocó nuestra decisión en *El Vocero de P.R. v. E.L.A.*, 131 D.P.R. 356 (1992). El efecto de la decisión del Tribunal Supremo federal fue disponer que la vista preliminar en Puerto Rico debía ser pública. Decidió, específicamente, que la vista preliminar que celebramos aquí es lo suficientemente parecida a la que se celebra en California, la cual, a su vez, es muy parecida a un juicio, por lo que le resulta de aplicación lo resuelto en *Press-Enterprise Co. v. Superior Court*, 478 U.S. 1 (1986). Esta decisión impone la necesidad que revaluemos nuestros pronunciamientos anteriores respecto al derecho de un imputado a contrainterrogar los testigos de cargo y a presentar evidencia a su favor. La norma que a los efectos adoptemos tiene inevitablemente que reflejar la realidad de que ahora la vista preliminar en Puerto Rico es pública.([1])

---

[1] En *Press-Enterprise Co. v. Superior Court*, 478 U.S. 1, 13–14 (1986), el Tribunal Supremo federal resolvió que la vista preliminar de California debía ser pública, "unless specific, on the record findings are made demonstrating that 'closure is essential to preserve higher values and is narrowly tailored to serve that interest' ". Esta norma aplica a la vista preliminar de Puerto Rico, en conformidad con lo resuelto en *El Vocero de Puerto Rico v. Puerto Rico*, 508 U.S. 147 (1993).

El inciso (c) de la Regla 23 de Procedimiento Criminal, 34 L.P.R.A. Ap. II, fue enmendado mediante la Ley Núm. 197 de 12 de agosto de 1995, eliminando la parte que disponía sobre la intimidad de la vista preliminar y añadiendo los siguientes tres (3) párrafos:

"La vista preliminar será pública a menos que el magistrado determine, previa solicitud del imputado, que una vista pública acarree una probabilidad sustancial de menoscabo a su derecho constitucional a un juicio justo e imparcial, y que no hay disponibles otras alternativas menos abarcadoras y razonables que una vista pri-

# I

El 1ro de julio de 1994 el peticionario policía Ramón R. Andaluz Méndez conducía un vehículo oficial de la Policía de Puerto Rico por la avenida Ponce De León. Con el vehículo que manejaba, el policía Andaluz Méndez impactó el que conducía el Sr. Ramón R. Rodríguez. Como producto del impacto murieron dos (2) personas que viajaban como pasajeros en el vehículo que conducía Rodríguez.

Por los hechos reseñados, el Ministerio Público presentó dos (2) denuncias contra el policía Andaluz Méndez por infracciones al Art. 87 del Código Penal de Puerto Rico, 33 L.P.R.A. sec. 4006.([2])

El 7 de diciembre de 1994 se celebró la vista preliminar contra el policía Andaluz Méndez en relación a los cargos reseñados. La magistrada que presidió la vista determinó que no existía causa probable para acusar. Inconforme, el Ministerio Público anunció su intención de solicitar una vista preliminar en alzada. La vista en alzada se celebró el 22 de febrero de 1995. El Ministerio Público presentó cuatro (4) testigos.

---

vada para disipar tal probabilidad. En tales casos la decisión del magistrado deberá fundamentarse en forma precisa y detallada.

"También se podrá limitar el acceso a la vista preliminar cuando el magistrado determine, previa solicitud a tales efectos, que tal limitación es necesaria para proteger cualquier otro interés de naturaleza apremiante y que no existen otras alternativas menos abarcadoras y razonables. La decisión del magistrado deberá fundamentarse en forma precisa y detallada.

"Se dispone que el magistrado deberá limitar el acceso a la vista preliminar, previa solicitud del fiscal, en aquellos casos en que éste interese presentar el testimonio de un agente encubierto o un confidente que aún se encuentre en esas funciones o cuando esté declarando la víctima de un caso de violación o actos impúdicos o lascivos." Regla 23(c) de Procedimiento Criminal, 34 L.P.R.A. Ap. II (Sup. 1996).

([2]) Este artículo tipifica el delito de imprudencia crasa o temeraria al conducir un vehículo de motor. Dispone lo siguiente:

"Cuando en la muerte ocasionada por una persona al conducir un vehículo de motor mediare imprudencia crasa o temeraria, se impondrá pena de reclusión por un término fijo de seis (6) años. De mediar circunstancias agravantes, la pena fija establecida podrá ser aumentada hasta un máximo de diez (10) años; de mediar circunstancias atenuantes, podrá ser reducida hasta un mínimo de cuatro (4) años.

"La imprudencia crasa o temeraria es aquella de tal naturaleza que demuestre un absoluto menosprecio de la seguridad de los demás bajo circunstancias que probablemente produzcan daños a éstos y no significa una mera falta de cuidado." Art. 87 del Código Penal, 33 L.P.R.A. sec. 4006 (Sup. 1996).

El señor Rodríguez, conductor del vehículo impactado, fue el primer testigo de cargo en la vista preliminar en alzada. Testificó[3] que el 1ro de julio de 1994, en horas de la noche, salió de una Iglesia ubicada en el Paseo Covadonga, en el área de Puerta de Tierra, y se dirigió al Viejo San Juan, para lo cual se disponía tomar la Avenida Muñoz Rivera, cuyo tráfico transita en esa dirección. Para ello debía cruzar la avenida Ponce De León. Indicó que tomó una salida del Paseo Covadonga para cruzar la avenida Ponce De León y llegar a la Muñoz Rivera. Se detuvo ante una señal de "Ceda el Paso" justo antes de entrar en la avenida Ponce De León. Como no vio que viniera nadie por la referida avenida continuó la marcha. Mientras cruzaba la Avenida Ponce de León, estando ya sobre el segundo carril, este es el carril paralelo al de transporte colectivo autorizado, el vehículo que manejaba fue impactado.

David Barranco Franco fue el segundo testigo de cargo. Testificó que en la misma fecha señalada conducía su vehículo por el Paseo Covadonga, justo detrás del vehículo manejado por el señor Rodríguez. Indicó que cuando iniciaba la marcha, después de haberse detenido en la señal de "Ceda el Paso", vio un vehículo de motor que iba a velocidad excesiva por el carril izquierdo de la Avenida Ponce de León (el que está paralelo al de transporte colectivo autorizado) y llevaba las luces apagadas. Dicho vehículo impactó el que conducía el señor Rodríguez, el cual se elevó como producto del impacto.

Por último, declararon Gladys Becerra y Carlos Hernández. La primera testificó que escuchó el ruido producido por el impacto. El segundo testificó sobre la forma en que quedaron los vehículos después del accidente. Ninguno de los dos vio el vehículo que manejaba el peticionario antes de ocurrir el accidente. Todas las personas que declararon salían de la misma iglesia que había visitado el señor Rodríguez.

---

[3] Incorporamos aquí los resúmenes expuestos por el peticionario como parte de la Moción al Amparo de la Regla 64(p) de Procedimiento Criminal vigente, 34 L.P.R.A. Ap. II, que presentó ante el Tribunal de Primera Instancia.

Después de desfilada esta prueba, el Ministerio Público dio su caso por sometido. La representación legal del imputado anunció a la magistrada que tenía interés de interrogar a tres (3) testigos, uno de los cuales había sido anunciado por el Ministerio Público, pero no fue presentado. En relación con este testigo, la magistrada solicitó que la defensa hiciera una oferta de prueba sobre lo que se esperaba obtener de su testimonio. Enfatizó que por ser éste un testigo del Pueblo que no había declarado en la vista preliminar, la defensa sólo podría llamarlo si de una oferta de prueba surgía que el testigo aportaría prueba exculpatoria. *Pueblo v. Rodríguez Aponte*, 116 D.P.R. 653 (1985). A los efectos dijo lo siguiente:

> Bueno, si me hace la oferta de prueba y me dice para qué va a declarar él, pues yo lo escucho con mucho gusto. Primero me tiene que poner en condiciones de hacer la determinación. Número uno: Que no sea para dirimir conflictos de prueba porque eso a mí no me corresponde en esta etapa, y que sea prueba exculpatoria. O sea, que yo tenga que oír para yo hacer una inferencia de que es una prueba que destruye cualquier probabilidad de que se haya cometido un delito y de que el delito lo cometiera el señor imputado. Transcripción de evidencia de la vista preliminar en alzada, celebrada el 22 de febrero de 1995, en los casos criminales Núms. KVP-94-0443 y KVP-94-0444, *Pueblo* v. *Ramón R. Andaluz Méndez*, pág. 100.

En relación con los otros dos (2) testigos, la magistrada expresó lo siguiente:

> Lo que el compañero me está pidiendo es que yo determine quién dice la verdad, si los testigos del Pueblo o los testigos de la Defensa, y eso yo no lo voy a hacer en esta etapa del proceso. Yo entiendo que con la prueba que se ha presentado es suficiente para determinar causa por los delitos imputados. *Y que esos testigos yo no tengo ningún reparo en escucharlos, pero yo no voy a dirimir controversias de prueba aquí porque entiendo que no es mi función.* Estaría violentando todo lo que el Tribunal Supremo ha resuelto. A mí me parece que si el compañero los quiere sentar, yo con mucho gusto los escucho, pero sencillamente lo único que quedaría es su testimonio consignado en el récord como que declararon eso. Pero yo no voy entrar a dirimir en esta etapa quién dice credibilidad (sic) porque yo no

soy juzgador de los hechos. Si yo tuviera ante mí el juicio plenario en este momento, yo entonces sí evaluaría el testimonio de los testigos, del Pueblo, en cuanto a todos los elementos que hay que utilizar para evaluar un testimonio, motivaciones, interés, todo lo que fuera. Y evaluaría el testimonio de los testigos de la defensa de la misma forma en cuanto a motivaciones, interés, "demeanor", todo lo que se ha dicho que un juez tiene que evaluar. Pero lo que pasa es que esa no es nuestra función. Nosotros tenemos aquí una función bien importante, que es la función de determinar si el fiscal cuenta con prueba para someter a una persona a un juicio. Y de la prueba que ha desfilado, nuestra evaluación es que sí, que esa es prueba para presentarla a un juicio. Ahora, ¿quién dice la verdad, si es que hay conflicto en la prueba? Eso no me corresponde a mí decidirlo. Eso le corresponde al juzgador de los hechos en su momento; sea el juez que le corresponda el juicio o sea un jurado, si él decide utilizar el derecho que le da la Constitución a que un jurado eval[ú]e su caso. Así es que el compañero está .... El Tribunal no se está negando a que usted traiga sus testigos. Por el contrario, le damos la opción a usted, pero sí le decimos cuál es el problema en términos de la función de esta Juez en una Vista Preliminar. (Énfasis suplido.) Íd, págs. 101–102.

En síntesis, ante la solicitud de la representación legal del imputado de presentar prueba de defensa, la magistrada no se negó a escuchar los testigos que tuviera a bien presentar el imputado. Sin embargo, expresó que dicha actuación sería fútil, porque ésta suponía que se dirimiera credibilidad, lo cual no le correspondía. El imputado decidió no presentar la prueba anunciada.

Una vez se presentaron los pliegos acusatorios, el acusado presentó una moción de desestimación, al amparo de la Regla 64(p) de Procedimiento Criminal, 34 L.P.R.A. Ap. II. Fundamentó la moción en dos (2) planteamientos: ausencia total de prueba respecto a los delitos imputados y que la magistrada violó su derecho constitucional a un debido proceso de ley al negarse a considerar la evidencia que se disponía presentar el imputado. El Tribunal de Primera Instancia denegó la moción de desestimación y ordenó que se prosiguiera con el juicio. El acusado acudió al Tribunal de Circuito de Apelaciones mediante *certiorari.*

El Tribunal de Circuito confirmó la determinación del

foro de instancia. Citó nuestra jurisprudencia indicativa de que el derecho del imputado en una vista preliminar a contrainterrogar los testigos de cargo y a presentar evidencia a su favor no es irrestricto. Concluyó expresando lo siguiente:

> Estas expresiones encarnan el criterio adoptado por la mayoría de nuestro Tribunal Supremo y, como tal, venimos obligados a acatarlo independientemente de nuestra propia postura y del texto literal de la Regla 23 de las de Procedimiento Criminal. Sentencia recurrida, pág. 13.

Ordenó la continuación de los procedimientos ante el tribunal de instancia. Inconforme, el acusado compareció ante nos mediante recurso de *certiorari.*

## II

En lo que aquí nos concierne, y ante la norma de que la vista preliminar en Puerto Rico era privada, este Tribunal había expresado en el pasado que "[e]l' derecho que reconoce la Regla 23 de Procedimiento Criminal al imputado 'a ofrecer prueba en su favor' en la vista preliminar ... [n]o es irrestricto". *Pueblo v. Rodríguez Aponte,* supra, pág. 668. A los efectos se dijo, además, que "[u]na vez el juez instructor se ha convencido de la existencia de causa probable puede, dentro de su facultad para reglamentar la presentación de prueba de la defensa, decidir no seguir escuchando prueba, o sea, no escuchar la prueba de la defensa". *El Vocero de P.R. v. E.L.A.,* supra, pág. 408.[4]

Estas expresiones eran entonces acordes con los principios básicos del debido proceso de ley y el concepto constitucional de juicio justo, dada la intimidad de la vista preliminar. Imperaba el carácter investigativo de la vista

---

[4] Como ha quedado dicho, este caso fue revocado por el Tribunal Supremo federal en *El Vocero de Puerto Rico v. Puerto Rico,* supra, sólo en lo relativo a la determinación de constitucionalidad que allí efectuamos con relación a la disposición de intimidad que entonces contenía la Regla 23(c) de Procedimiento Criminal, *supra,* sobre la vista preliminar.

preliminar, la cual bien cumplía su propósito de evitar que una persona fuese injustificadamente sometida a los rigores de la fase adjudicativa criminal, requiriéndole al Estado sólo la presentación de aquella prueba mínima que satisficiere en términos de probabilidades el ánimo no prevenido de un ente neutral que justificara su determinación de existencia de causa probable para acusar. Repetimos que el elemento inarticulado que justificaba estas expresiones era la privacidad de la vista.

La determinación de que la vista preliminar será pública tiene el efecto inmediato de reproducir en esta etapa procesal la misma carga que produce el juicio criminal en su fondo. Además, tiene efectos perjudiciales sobre el derecho del imputado a gozar de la celebración de un juicio justo e imparcial, requerimiento inmediato del derecho constitucional a la observancia del debido proceso de ley. Así lo habíamos anticipado ya en *El Vocero de P.R. v. E.L.A.*, supra, págs. 425–426, cuando expresamos lo siguiente:

> Ahora bien, por la forma y manera en que la vista preliminar se conduce en Puerto Rico y por el hecho de que ésta se lleva a cabo en la etapa investigativa judicial, el hacerla abierta al público podría tener graves repercusiones para el derecho del imputado a un juicio justo. La publicidad perjudicial se originaría en la etapa investigativa judicial donde el imputado se confronta con un proceso en que el *quantum* de la prueba para demostrar la existencia de causa probable es una mera *scintilla*. Sólo se requiere que haya prueba suficiente para determinar que existe un caso prima facie; la evidencia inculpatoria puede ser de naturaleza totalmente inadmisible en el juicio, y al acusado se le puede limitar su oportunidad de presentar prueba.
>
> El despliegue en los medios de este tipo de información dificulta que se pueda celebrar un juicio justo e imparcial. No se trata solamente del contacto que pueda tener el Jurado con una publicidad perjudicial durante el desarrollo del juicio. La publicidad adversa durante esta etapa investigativa reduce grandemente el número de candidatos idóneos para desempeñarse como juzgadores de hechos, personas que actúen con total imparcialidad y rectitud. Además dificulta las medidas correctivas que se puedan tomar para evitar los efectos perjudiciales de la publicidad. Regla 121(e) de Procedimiento Criminal, 34

L.P.R.A. Ap. II. No estamos ante una especulación, sino ante una realidad, sobre todo en nuestra jurisdicción "donde el territorio es reducido y la población compacta, servida por medios de comunicación y difusión de eficacia máxima [por lo que], sería imposible formar un jurado totalmente ignorante y desconocedor ...". "La publicidad excesiva sobre un caso que sea perjudicial al acusado hace más difícil la selección de un Jurado imparcial y la celebración de un juicio justo."

Si se abriera la celebración de la vista preliminar, según ésta se conduce actualmente en Puerto Rico, al público y a la prensa, los candidatos a jurado estarían más propensos a ser afectados en su objetividad. Estarían en contacto no sólo con información general sobre el caso y el imputado, sino que también podrían tener acceso a información inculpatoria inadmisible en juicio, además de conocer de antemano parte de la prueba que tienen el Fiscal y el acusado. (Énfasis suprimido, y citas y escolio omitidos.)

También anticipamos en aquel momento que la publicidad de la vista preliminar en Puerto Rico incidiría perjudicialmente sobre el derecho a la intimidad del imputado, imponiendo una fuerte carga sobre su honra y reputación. Al respecto expresamos lo siguiente:

La vista preliminar en Puerto Rico es un mecanismo procesal creado para beneficio del imputado y así evitar someterlo a un juicio criminal en su fondo de no alcanzarse el *quantum* de prueba requerido para encontrar causa probable para acusar. De esta manera se protege no sólo la presunción de inocencia, sino también la intimidad y dignidad del imputado. Toda medida que proteja y refuerce el derecho del imputado a la presunción de inocencia y a que no se le exponga injustificadamente a la pérdida de su intimidad y dignidad, en el balance de intereses, debe inclinarse a su favor.

En lo que se refiere al imputado, sobre todo al que resulta finalmente exonerado en vista preliminar, ésta resulta en extremo onerosa. Entre otras cosas por el menoscabo que sufre su presunción de inocencia y por el estigma que conlleva el que se le haya imputado la comisión de un delito sin que siquiera se haya aportado una *scintilla* de prueba para demostrar, prima facie, que se cometió el delito y que éste fue quien probablemente lo cometió. Tal estigma es, de por sí, suficiente para hacerle sentir denigrado como persona en su fuero interno y ante la sociedad. Se le hiere en su dignidad como ser humano y se le expone al rechazo público.

Ninguna persona se desprende de sus derechos humanos, ci-

viles y constitucionales por el simple hecho de que se le impute haber delinquido. El imputado sigue siendo acreedor, entre los muchos derechos que le asisten, al de la intimidad y a que se le respete su dignidad. Art. II, Secs. 1 y 8 de la Carta de Derechos, Const. E.L.A., *supra. El Vocero de P.R. v. E.L.A.*, supra, págs. 427–428.

Por lo tanto, dada la publicidad de la vista preliminar en la actualidad, son al menos dos (2) derechos que se verían virtualmente afectados por la norma que le niega a un imputado el derecho a contrainterrogar a los testigos de cargo y a presentar evidencia a su favor en la vista preliminar. Tanto el derecho a un juicio justo e imparcial como el derecho a la intimidad sufrirían un insoportable perjuicio si continuásemos sosteniendo la norma antes dicha. En ambos casos se incrementa el daño cuando pensamos que el efecto neto de la norma es reconcerle sólo al Ministerio Público el derecho a presentar la evidencia que tenga a bien traer a la vista, mientras que en un gran número de las veces se le niega automáticamente al imputado ejercer el mismo derecho. En relación con el derecho a un juicio justo e imparcial, el perjuicio particular surge del hecho que sólo una versión recibiría publicidad, la del Estado. El perjuicio respecto al derecho a la intimidad, la honra y la reputación del imputado surgiría particularmente en los casos en que la evidencia presentada por el Ministerio Público sea parcial o totalmente falsa y el imputado no pueda refutarla adecuadamente en la vista misma. Este perjuicio cobra fuerza al considerar que la mayor parte de los casos terminan después de celebrarse la vista preliminar.

Todo lo anterior, ante la publicidad del proceso, incide directamente sobre el derecho a un debido proceso de ley, que protege la Constitución del Estado Libre Asociado. Art. II, Sec. 7, Const. E.L.A., L.P.R.A., Tomo 1. Se trata después de todo de una cláusula que podríamos denominar "como la disposición matriz de la garantía de los derechos individuales ante la intervención injustificada del Estado con el ciudadano. En nombre de esta disposición la interpretación

jurisprudencial faculta al poder judicial a ejercer su función fiscalizadora mediante el establecimiento de un balance entre el interés legítimo del Estado y los derechos reclamados por el ciudadano". O.E. Resumil de Sanfilippo, *En nombre del debido proceso de ley ... La garantía constitucional de los derechos individuales a través del derecho penal sustantivo y la etapa investigativa del proceso penal*, 58 Rev. Jur. U.P.R. 135, 140 (1989).

El pasaje citado resalta el carácter pragmático y circunstancial del debido proceso de ley, el cual hemos reconocido expresamente en nuestra jurisdicción. *Pueblo v. Suárez Sánchez*, 103 D.P.R. 10 (1974). Este derecho permite que en cualquier determinado momento podamos prestar atención a las particularidades que presenta una situación y que arribemos a una determinación que armonice mejor el balance de los derechos en pugna. "Por razón de su carácter pragmático, esta sección permite que, a través de la interpretación judicial, la Constitución se ajuste a la realidad social del momento de su aplicación, manteniendo así la vigencia de sus principios a pesar del cambio de valores que pueda ocurrir como resultado de la evolución." Resumil de Sanfilippo, *supra*.

Es en atención a lo anterior que entendemos que en la actualidad, ante el hecho que la vista preliminar es pública, cobra mayor fuerza la necesidad de salvaguardar los derechos fundamentales del imputado, como son el derecho a un juicio justo e imparcial y, particularmente, el derecho a la intimidad, a que no se lesionen su honra y dignidad. El adecuado balance de intereses en este momento impone la necesidad de reconocer en toda su amplitud el derecho del imputado a "contrainterrogar los testigos en su contra y ofrecer prueba a su favor", que expresamente reconoce la Regla 23 de Procedimiento Criminal, 34 L.P.R.A. Ap. II (Sup. 1996).

La opinión que hoy emite este Tribunal reconoce esta necesidad. Sin embargo, insiste en limitar el transcrito de-

recho del imputado. A los efectos dispone la opinión mayoritaria lo siguiente:

> Teniendo en mente que la vista preliminar no es un minijuicio, cuando se haga un ofrecimiento de prueba que por su naturaleza demuestra en forma incontrovertida que el imputado no cometió el delito imputado, que cometió un delito menor o que se violaron garantías o privilegios constitucionales que justifican su exoneración en esa etapa, el magistrado viene obligado a escuchar la prueba así ofrecida, *siempre y cuando ésta permita disponer del caso en ese momento y no requiera resolver cuestiones de credibilidad que correspondan a la etapa del juicio.* (Énfasis en el original suprimido y énfasis suplido.) Opinión mayoritaria, pág. 663.

Entendemos que el mecanismo de oferta de prueba puede ser saludable para ayudar al magistrado a ejercer su facultad inherente de controlar la prueba que se presenta.([5]) También entendemos acertado el criterio que dispone que no puede perderse de vista el momento procesal en que se celebra la vista preliminar y que no es saludable que ésta se convierta en un minijuicio. En este respecto el magistrado debe tener presente que todo lo que se persigue en este momento es determinar si existe la probabilidad de que se ha cometido un delito y si el imputado fue quien lo cometió. Seguiría en vigor, por lo tanto, el criterio de *quantum* de prueba con el que debe cumplir el Ministerio Público en la vista preliminar, la *scintilla* de evidencia.([6])

Con lo que no podemos coincidir es con el criterio restrictivo que impone la mayoría en su opinión respecto a que el magistrado podrá negarse a escuchar la prueba del

---

([5]) No pretendemos de forma alguna que el magistrado pierda la referida facultad. Entendemos que en atención al momento procesal en que se lleva a·cabo la vista preliminar, el mecanismo de ofrecimiento de prueba puede ayudar mejor al magistrado para identificar, dentro de su discreción, prueba que pueda ser excluida por ser impertinente, repetitiva o de escaso valor probatorio.

([6]) Por lo tanto, nada de lo que aquí expresamos trastoca la jurisprudencia que ha dispuesto que la vista preliminar no puede ser utilizada como un mecanismo para descubrir evidencia y que al imputado no le cobija el derecho de exigir la comparecencia de los testigos del pueblo, que no hayan sido presentados en la vista preliminar, aun cuando fueren anunciados como testigos en la denuncia. *Pueblo v. Rodríguez Aponte*, 116 D.P.R. 653 (1985).

imputado, cuando ésta "requiera resolver cuestiones de credibilidad". Sencillamente, entendemos que esta limitación es improcedente, particularmente cuando la función central del magistrado es exactamente dirimir credibilidad. El magistrado, al igual que el juez en la vista en su fondo, tiene el deber de analizar la evidencia que se le presente y adjudicar la credidibilidad que tal prueba le merezca. La verdad jurídica que surge de este ejercicio es lo que justifica la determinación del magistrado sobre la existencia o no de causa probable para acusar. Esto es todo lo que adjudica el magistrado en esta etapa del proceso criminal. Se le hace un flaco servicio al propósito de la vista preliminar si se sostiene que, ante evidencia del imputado que ponga en tela de juicio la evidencia del Pueblo, el magistrado pueda negarle al imputado la posibilidad de presentarla por motivo de que la evidencia le impondría la obligación de dirimir credibilidad. Esto equivale a decir que el magistrado puede determinar la existencia de causa probable, aun cuando la evidencia que a los efectos presente el Ministerio Público sea falsa. La vista preliminar persigue identificar si el Pueblo tiene suficiente evidencia para probar que se cometió un delito y que el imputado lo cometió. Si ésta es falsa o no le merece al magistrado credibilidad, a la luz de la evidencia que se propone presentar el imputado, el magistrado tiene que determinarlo escuchando su prueba.

Por lo tanto, entendemos que el criterio aplicable para medir la prueba que quiera presentar el imputado es que el magistrado deberá escucharla cuando, de ser creída, ésta tienda a: (1) establecer una defensa afirmativa dispositiva de la responsabilidad criminal, (2) negar uno o más elementos del crimen imputado o (3) impugnar el testimonio de alguno de los testigos de cargo que hayan declarado en la vista, siempre que la determinación de causa probable del magistrado se base total o parcialmente en el testimonio impugnado.

Como la opinión mayoritaria continúa limitando injustificadamente el derecho del imputado a contrainterrogar

testigos de cargo y a presentar evidencia a su favor, no podemos suscribirla enteramente.

## III

La magistrada que presidió la vista preliminar en alzada en el caso de autos no se negó a escuchar la prueba que pretendía utilizar el imputado, pero indicó que ésta no variaría su determinación de causa probable para acusar, puesto que su atención suponía dirimir la credibilidad de los testigos de cargo. Entendemos que erró al aplicar el reseñado criterio. No obstante, de los hechos de este caso se sostiene la determinación de causa probable efectuada por la magistrada, por lo que concurrimos con la opinión del Tribunal. Veamos.

Apliquemos el criterio esbozado en la presente opinión a los hechos del caso de autos. Al peticionario Andaluz Méndez se le imputó la comisión del delito tipificado en el Art. 87 del Código Penal de Puerto Rico, *supra* (imprudencia crasa o temeraria al conducir vehículos de motor).[7] Los elementos constitutivos de este delito son: (1) ocasionar la muerte a un ser humano, (2) mientras se conduce un vehículo de motor, (3) mediando imprudencia crasa o temeraria. En las denuncias presentadas contra el peticionario en instancia, el Ministerio Público consignó como hechos constitutivos del tercer elemento, imprudencia crasa o temeraria, el que el peticionario condujera sin las luces de su vehículo encendidas, sin biombo y a una velocidad mayor a la permitida por ley. Mediante los testimonios de los testigos que presentó el Ministerio Público, se trajo a la atención de la magistrada evidencia que tiende a demostrar los hechos reseñados, alegadamente constitutivos de la imprudencia crasa o temeraria, aunque nunca se presentó prueba que estableciera la velocidad a la que viajaba el acusado. El imputado, por su parte, pretendía presentar los testimonios de tres (3) personas para refutar la eviden-

---

[7] Para el texto del mencionado delito, véase la nota al calce (2) de esta opinión.

cia desfilada a los efectos de que Andaluz Méndez viajaba con las luces y el biombo del vehículo apagado. No hizo oferta alguna de evidencia que impugnara la presentada por el Pueblo sobre el hecho que viajaba a exceso de velocidad. Coincidimos con la opinión mayoritaria en que este hecho, de ser cierto, podría sostener una determinación afirmativa respecto al elemento de imprudencia crasa o temeraria. Dado que Andaluz Méndez no ofreció evidencia alguna que impugnara la que presentó el Ministerio Público respecto a este hecho, el error cometido por la magistrada no es sustancial y debe sostenerse su determinación en cuanto a la existencia de causa probable, por lo que procede confirmar la sentencia emitida por el Tribunal de Circuito de Apelaciones.

## — O —

Opinión disidente emitida por el Juez Asociado Señor Rebollo López.

Resulta verdaderamente difícil aceptar la decisión que emite el Tribunal en el día de hoy en el presente caso. La misma no sólo violenta las disposiciones de la Regla 23 de Procedimiento Criminal, 34 L.P.R.A. Ap. II —lo cual tiene la consecuencia de que se viole el debido procedimiento de ley— sino que la referida decisión mayoritaria desafía, y resulta contraria a, todo sentido de lógica.

### I

Un juez instructor determinó causa probable para arresto, por dos (2) infracciones al Art. 87 del vigente Código Penal, 33 L.P.R.A. sec. 4006, contra el aquí peticionario Ramón Andaluz Méndez. Celebrada la correspondiente vista preliminar, al amparo de las disposiciones de la Regla 23 de Procedimiento Criminal, *supra*, un juez del entonces Tribunal de Distrito *determinó que no existía causa probable para acusar a Andaluz Méndez.*

No conforme, el Ministerio Público solicitó la celebración de una vista en alzada. En la misma, el Estado presentó cuatro (4) testigos, luego de lo cual dio por "sometido" su caso. En esos momentos, la representación legal del peticionario informó al juez que presidía dicha vista que tenía la intención de presentar tres (3) testigos. En relación a ello, el magistrado expresó, en lo pertinente, que no tenía "ningún reparo en escucharlos, pero yo no voy a dirimir controversias de prueba aquí porque entiendo que no es mi función. ... Ahora, ¿quién dice la verdad, si es que hay conflicto en la prueba? Eso no me corresponde a mi decidirlo". Informe para mostrar causa, Apéndice, págs. 101–102. Ante ello, la defensa —con razón— optó por no presentar prueba. Se determinó causa probable para acusar.

Radicados los correspondientes pliegos acusatorios ante el Tribunal de Primera Instancia, Sala Superior de San Juan, la defensa presentó una moción de desestimación al amparo de las disposiciones de la Regla 64(p) de Procedimiento Criminal, *supra*. Alegó, en lo pertinente, que no se había determinado causa probable en la vista preliminar "con arreglo a la ley y a derecho" debido, de manera principal, a que no se le permitió presentar prueba de defensa en la misma. Dicha moción fue declarada sin lugar. Solicitada la revisión de dicha determinación, vía *certiorari*, el Tribunal de Circuito de Apelaciones confirmó.

Inconforme, acudió ante este Tribunal el peticionario Andaluz Méndez. En el día de hoy, una mayoría de los integrantes del Tribunal confirma dicha actuación. Al así hacerlo, la Mayoría establece una *tenebrosa* norma jurisprudencial. Se resuelve, en el día de hoy, que:

> Teniendo en mente que la vista preliminar no es un minijuicio, cuando se haga un *ofrecimiento de prueba* que por su naturaleza *demuestra en forma incontrovertida que el imputado no cometió el delito imputado*, que cometió un delito menor o que se violaron garantías o privilegios constitucionales que justifican su exoneración en esa etapa, el magistrado viene *obligado* a escuchar la prueba así ofrecida, *siempre y cuando ésta permita disponer del caso en ese momento y no requiera resolver cuestiones de credibilidad que correspondan a la etapa del juicio. (Én-

fasis en el original suprimido y énfasis suplido.) Opinión mayoritaria, pág. 663.

Como puede notarse, dicha norma resulta ser, además de errónea, totalmente contradictoria. Por un lado, se afirma que la vista preliminar "no es un minijuicio". Por otro lado, se requiere que la prueba que presente el imputado de delito demuestre fehacientemente su inocencia; ello convierte prácticamente a la vista preliminar en un juicio plenario en esa clase de situaciones.

## II

No hay duda sobre el hecho de que la génesis de la vista preliminar, que establece la citada Regla 23 de Procedimiento Criminal, ante, es estatutaria; esto es, dicha vista no es de origen constitucional. Ahora bien, tampoco puede haber duda alguna sobre el hecho de que, una vez la misma fue incorporada a nuestro ordenamiento jurídico, la referida vista entró a formar parte integral del debido procedimiento de ley. *Cf. Pueblo v. Prieto Maysonet*, 103 D.P.R. 102, 107–108 (1974); *Reyes v. Delgado*, 81 D.P.R. 937, 941 (1960). Ello, naturalmente, tiene la consecuencia de que la vista preliminar no puede ser obviada, desmembrada o desnaturalizada por este Tribunal.

Conforme claramente se establece en la referida Regla 23, inciso (c), el imputado de delito tiene el derecho a "contrainterrogar a los testigos en su contra y ofrecer prueba en su favor". Es por ello que sostenemos que el coartar o restringir, de manera arbitraria o irrazonable, cualesquiera de esos derechos violenta la cláusula sobre el debido procedimiento de ley. Ello, naturalmente, *no* significa que el magistrado que preside la vista preliminar no tiene autoridad o discreción para regular los procedimientos que ante él se celebran; ese es un derecho inherente al ejercicio

de su delicada función de impartir justicia. En síntesis y como anteriormente hemos expresado:(¹)

> Una determinación de causa probable realizada en una vista preliminar en la cual se restringe arbitraria e irrazonablemente el derecho que tiene el imputado de delito a contrainterrogar los testigos en su contra *y .en que se priva a éste del derecho a presentar prueba en su favor es una no realizada "con arreglo a la ley y a derecho"* por razón de haberse infringido el debido procedimiento de ley, *siendo inmaterial cuán fuerte y confiable pueda haber sido la prueba presentada por el Estado durante dicha vista.* (Énfasis suplido.) *Pueblo v. Cruz Bayona,* 124 D.P.R. 568, 579 (1989).

## III

Ahora bien, y en lo pertinente al caso ante nuestra consideración, *¿qué significa el derecho a "ofrecer prueba a su favor"?*

Conforme resuelve la Mayoría en el presente caso, *de hoy en adelante,* únicamente procede la presentación de prueba de defensa a nivel de vista preliminar cuando, *a juicio del magistrado que presida dicha vista,* tal prueba "demuestr[e] en forma incontrovertida que el imputado no cometió el delito imputado, que cometió un delito menor o que se violaron garantías o privilegios constitucionales que justifican su exoneración en esa etapa"; esto es, siempre y cuando, *a juicio del referido magistrado,* dicha prueba "permita disponer del caso en ese momento" y la misma "no requiera resolver cuestiones de credibilidad ...". (Énfasis suprimido.) Opinión mayoritaria, pág. 663.

Dicho de manera más sencilla, y conforme la Mayoría, el derecho que concede la citada Regla 23 a todo imputado de delito, de "ofrecer prueba a su favor" con el propósito de evitar ser sometido a un proceso criminal en forma injustificada, *ya no existe.* El Tribunal, *de un plumazo y de manera arbitraria e irrazonable,* lo ha eliminado por medio de

---

(¹) Véase opinión disidente emitida por el Juez suscribiente, a la cual se unió el Juez Asociado Señor Hernández Denton, en *Pueblo v. Cruz Bayona,* 124 D.P.R. 568, 573 (1989).

la decisión que emite en el presente caso; *acción mayoritaria que, repetimos, violenta el debido procedimiento de ley.*

Somos del criterio, por otro lado, que el derecho a presentar prueba durante la vista preliminar *necesariamente* conlleva la *obligación* del magistrado que preside dicha vista a *considerar* la misma a los fines de la determinación que sobre existencia, o no, de causa probable tiene éste que hacer. En otras palabras, aquí no se trata —como aparentemente entiende la Mayoría— de una competencia deportiva en que una persona compite por el placer de competir.

Si existe la obligación, por parte del magistrado, de considerar la prueba de defensa que el imputado tiene a bien presentar, ello *necesariamente conlleva,* además, la obligación del magistrado de *aquilatar* la misma; esto es, viene en la obligación de *dirimir credibilidad* si es que la prueba de defensa contradice la prueba de cargo.(²)

*Y es que ello no puede ser de otra manera.* Si es que el magistrado no está obligado a considerar y aquilatar la prueba que el imputado presente, *¿cual es el propósito, o la lógica, tras la concesión del derecho a presentarla?*

En nuestro criterio, supeditar o condicionar el derecho de los imputados de delito en nuestra jurisdicción a presentar prueba a nivel de vista preliminar —derecho que, de manera expresa, concede la mencionada disposición reglamentaria— *únicamente* en aquellas ocasiones en que "ésta permita disponer del caso en ese momento y no requiera resolver cuestiones de credibilidad que correspondan a la etapa del juicio" (opinión mayoritaria, pág. 663), constituye una restricción, arbitraria e irrazonable, de la vista preliminar por parte de este Tribunal que es violatoria del debido procedimiento de ley. *Dicha actuación desnaturaliza totalmente la vista preliminar, por cuanto equipara la misma a la vista en que se determina causa probable para*

---

(²) Hay que mantener presente que la prueba de defensa que presente el imputado puede *no* necesariamente contradecir la prueba de cargo. Ejemplo de ello sería cuando, habiéndosele acusado del delito de asesinato en primer grado, el imputado presenta prueba sobre "súbita pendencia y arrebato de cólera"; ello con el propósito de lograr una reducción, a nivel de vista preliminar, en la calificación del delito.

*arresto.* De hoy en adelante realmente *no* existe diferencia alguna entre ambas vistas y *no* hay razón válida alguna para mantener vigente las dos vistas.

## IV

El caso ante nuestra consideración es un ejemplo dramático de lo erróneo de la norma hoy implantada por el Tribunal. Debe recordarse que en la vista preliminar que originalmente se celebrara en el mismo, en la cual ambas partes presentaron prueba, el magistrado que presidió la misma determinó inexistencia de causa probable para acusar. Esto es, la prueba que presentó en dicha etapa el aquí peticionario convenció a dicho magistrado de que él no debía ser sometido a los rigores de un proceso criminal. Debemos presumir —de hecho, estamos obligados a hacerlo— que el referido magistrado es una persona conocedora del Derecho y un funcionario probo y honorable que descargó sus funciones de manera objetiva y responsable.

A nivel de vista preliminar en alzada, sin embargo, otro magistrado —igualmente honesto y responsable— determinó causa probable para acusar. Si ambos funcionarios son personas honorables, conocedoras de la ley y responsables, *¿por qué dos (2) dictámenes completamente opuestos y contradictorios?* La contestación luce ser sencilla: el primero escuchó tanto la prueba de cargo como la de la defensa y el otro sólo consideró la del Estado.

## V

La ola de criminalidad que lamentablemente azota a nuestro Puerto Rico —la cual es, y debe ser, causa de profunda y particular preocupación para todas las personas que tienen que ver, de una u otra forma, con la administración de la justicia en nuestra jurisdicción— se combate de manera efectiva, entre otras maneras: nombrando cada día más y mejores agentes del orden público; adiestrando

adecuadamente a aquellos que ya forman parte de la fuerza policiaca; nombrando fiscales que estén capacitados para desempeñar dichos cargos, ofreciendo a éstos cursos de mejoramiento profesional que les permitan competir de igual a igual con los abogados en la práctica privada de la profesión; designando jueces a nivel de instancia verdaderamente competentes y aprobando la legislación necesaria para que éstos nunca puedan ser objeto de presiones e influencias extrañas al ejercicio de sus cargos; mejorando los salarios de todos los antes mencionados funcionarios públicos para así poder atraer, y evitar el éxodo de, los competentes; concediendo a la Rama Judicial la tan necesaria autonomía fiscal para que ésta pueda implementar los programas que son necesarios; construyendo y manteniendo prisiones adecuadas y seguras que no sólo brinden lo necesario a los convictos de delito, sino que impidan que éstos se escapen impunemente de las mismas; y aprobando legislación adecuada que impida que le sea concedida libertad bajo palabra a reclusos que no lo ameritan.

Dicha ola criminal, sin embargo, *no* se combate permitiendo que el Estado viole impunemente los derechos civiles de los ciudadanos —haciendo, a manera de ejemplo, incursiones ilegales en vecindarios, las cuales no pasan de ser un espectáculo para fines de publicidad— *como tampoco* eliminando de un plumazo las garantías procesales que establece nuestro ordenamiento jurídico y las que este Tribunal, a través de los años, ha considerado prudente reconocer a toda persona que es acusada de la supuesta comisión de un delito público.

En lo que concierne al caso ante nuestra consideración *no* alcanzamos a comprender la "sabiduría" de la norma hoy establecida que elimina el derecho de un imputado de delito a ofrecer prueba a su favor en la vista preliminar. *Debe recordarse que, de ordinario, el escuchar no hace daño a nadie.*

El Tribunal, lamentablemente, se olvida de que el "propósito evidente de la vista preliminar es evitar que se so-

meta a un ciudadano en forma arbitraria e injustificada a los rigores de un proceso criminal" (*Pueblo v. López Camacho*, 98 D.P.R. 700, 702 (1970)), *y que lo que garantiza la cláusula del debido proceso de ley es el derecho a ser oído, no necesariamente el de convencer.*

Es por ello que disentimos.