EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| El Pueblo de Puerto Rico | Certiorari |
|---|---|
| Recurrido | 2014 TSPR 120 |
| v. | |
| Elvin Negrón Nazario | 191 DPR ____ |
| Peticionario | |

Número del Caso: CC-2012-1024

Fecha: 9 de octubre de 2014

Tribunal de Apelaciones:

Región Judicial de Mayagüez, Aguadilla, Fajardo, Panel IX

Abogados de la Parte Peticionaria:

Lcdo. Harry Padilla Martínez
Lcdo. Roland Arroyo Rojas

Oficina de la Procuradora General:

Lcda. Tanaira Padilla Rodríguez
Subprocuradora General

Lcda. Mónica Cordero Vázquez
Procuradora General Auxiliar

Materia: Derecho Penal – Art. 5.04 de la Ley de Armas: Alcance del delito de portación de arma de fuego sin licencia.

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

*Certiorari*

El Pueblo de Puerto Rico

      Recurrido

                               CC-2012-1024

        v.

Elvin Negrón Nazario

      Peticionario

Opinión del Tribunal emitida por el Juez Asociado señor Rivera García

En San Juan, Puerto Rico, 9 de octubre de 2014.

El caso de autos nos permite expresarnos, por primera vez, sobre el alcance del delito de portación y uso de un arma de fuego sin licencia, según tipificado en el Art. 5.04 de la Ley de Armas de Puerto Rico.[1] En ese contexto, debemos aclarar si un agente de la Policía de Puerto Rico puede ser acusado por el delito de <u>portación ilegal</u> cuando presuntamente <u>utiliza</u> su arma de reglamento en la comisión de un delito o su tentativa. En consideración a las alegaciones presentadas por el Ministerio Público en este caso y la evidencia

---

[1] Art. 5.04 de la Ley Núm. 404-2000, Ley de Armas de Puerto Rico. (25 LPRA sec. 458c). Aunque el título incluido en la ley es "portación y uso de un arma de fuego sin licencia", en esta opinión nos referiremos al mismo indistintamente bien con el título otorgado, o por "portación ilegal".

presentada durante la vista preliminar, concluimos que no procede la acusación por el Art. 5.04 en contra del Sr. Elvin Negrón Nazario ("señor Negrón" o "peticionario").

Ahora bien, aclaramos que la determinación que hoy alcanzamos no supone que los miembros de la Policía de Puerto Rico están exentos, a *priori*, de una imputación y eventual acusación por violación a las disposiciones del Art. 5.04. No obstante, en lo que respecta al presente caso, adelantamos que luego de estudiar con estricto rigor los alegatos de las partes, así como el derecho aplicable, revocamos la sentencia emitida por el Tribunal de Apelaciones. Como consecuencia, ordenamos la desestimación del cargo presentado en contra del señor Negrón por el delito de portación ilegal. Empero, devolvemos el caso al Tribunal de Primera Instancia para la continuación de los procedimientos relacionados a las acusaciones por tentativa de asesinato e infracción al Art. 5.15 de la Ley de Armas.[2]

A continuación exponemos los antecedentes fácticos y procesales que originaron la controversia que hoy atendemos.

**I**

El 3 de septiembre de 2010, el señor Negrón – un agente de la Policía de Puerto Rico para tal fecha – se encontraba libre de sus funciones oficiales compartiendo en el negocio Ibos Sport Bar de San Germán. En medio de

---

[2] Art. 5.15 de la Ley Núm. 404, supra. (25 LPRA sec. 458n).

una reyerta, el Sr. Juan José Rosado Capeles ("señor Rosado Capeles") golpeó en la cara al señor Negrón. En reacción a este incidente, se alega que el peticionario salió del establecimiento y apuntó y disparó con su arma de reglamento contra un vehículo en el que se encontraba el señor Rosado Capeles, quien resultó herido con tres impactos de bala.[3]

Como resultado de lo anterior, el Ministerio Público presentó tres denuncias en contra del señor Negrón: (1) una denuncia por el delito de tentativa de asesinato tipificado en el Art. 106(a) del derogado Código Penal de 2004;[4] (2) una denuncia por el delito de portación y uso de armas de fuego sin licencia bajo el Art. 5.04 de la Ley de Armas, _supra_;[5] (3) una denuncia por el delito de disparar o apuntar armas tipificado en el Art. 5.15 de la Ley de Armas.[6] En lo que respecta al delito imputado por infracción al Art. 5.04 de la Ley de Armas, _supra_, la denuncia leía de la siguiente manera:

> [e]l referido imputado ELVIN NEGRÓN NAZARIO, allá en o para el día 3 de septiembre de 2010, en San Germán, Puerto Rico, que forma parte de la jurisdicción del Tribunal de Primera Instancia de Puerto Rico, Sala de Mayagüez, ilegal, voluntaria y criminalmente portaba, transportaba y conducía sobre su persona, un arma de fuego consistente en una pistola marca Smith and Wesson modelo 5906,

---

[3] Véase, Apéndice de la Petición de _Certiorari_, _Declaración Jurada del Sr. Juan José Rosado Capeles del 8 de septiembre de 2010_, págs. 47-48.

[4] Art. 106(a) y Art. 35 de la Ley Núm. 149-2004, Código Penal de Puerto Rico de 2004. (33 LPRA ants. secs. 4734a y 4663). Véase, además, Apéndice de la Petición de _Certiorari_, págs. 21-22.

[5] Véase, Apéndice de la Petición de _Certiorari_, págs. 23-24.

[6] Art. 5.15 de la Ley Núm. 404, _supra._ (25 LPRA sec. 458n).

calibre 9mm con el número de serie BDK4788 color niquelada cargada con una bala en la recámara y 6 balas en el cargador, **sin haber obtenido previamente licencia según lo dispuesto por la Ley para la portación o transportación de la misma, expedida por el Tribunal de Primera Instancia de Puerto Rico, Sala de Mayagüez ni por la Policía de Puerto Rico**, siendo dicha pistola un arma de fuego con la cual pueda causarse grave daño corporal y hasta la muerte a un ser humano.[7]

Posterior a la determinación de causa probable para arresto por todos los delitos imputados, se celebró la correspondiente vista preliminar. En la misma, el Ministerio Público presentó como prueba los testimonios del señor Rosado Capeles, y de los Agentes, Sr. Raúl Acosta Pabón y Sr. José Acevedo Olivencia.[8] Durante el testimonio del agente Acosta Pabón, este afirmó:

[q]ue Elvin se identificó como Policía y que **los Policías están autorizados a portar un arma en cualquier sitio**. Que Elvin estaba nervioso y decía que lo iban a matar. Que el arma que posee un agente la autoriza a portar la Policía de Puerto Rico con un permiso y que se está **autorizado a portar la misma <u>todo el tiempo</u>**.[9]

Paralelo a ello, el agente Acevedo Olivencia testificó que "…el Sr. Elvin Negrón está autorizado por la Ley 53 de la Policía de PR y la autorización que da el Superintendente a portar un arma de fuego. **Que yo como Agente <u>tengo</u> que portarla y poseerla en <u>todo momento</u>**".[10] Finalizada la vista, el magistrado halló causa para acusar por los tres cargos originalmente imputados.

---

[7] (Énfasis suplido). Véase, Apéndice de la Petición de *Certiorari*, *Denuncia*, pág. 23.

[8] Íd., *Exposición narrativa de la prueba*, págs. 40-44.

[9] (Énfasis y subrayado suplido). Íd., pág. 41.

[10] (Énfasis y subrayado suplido). Íd., pág. 43.

En vista de lo anterior, el Ministerio Público optó por presentar las tres acusaciones correspondientes.[11] En lo concerniente a la infracción al Art. 5.04 de la Ley de Armas, _supra_, el Ministerio Público enmendó el lenguaje utilizado en la denuncia y expuso en la acusación lo siguiente:

> [e]l referido imputado ELVIN NEGRÓN NAZARIO, allá en o para el día 3 de septiembre de 2010, en San Germán, Puerto Rico, que forma parte de la jurisdicción del Tribunal de Primera Instancia de Puerto Rico, Sala de Mayagüez, ilegal, voluntaria y criminalmente portaba, transportaba y conducía sobre su persona, un arma de fuego consistente en una pistola marca Smith and Wesson modelo 5906, calibre 9mm con el número de serie BDK4788 color niquelada cargada con una bala en la recámara y 6 balas en el cargador, **consistente en que teniendo permiso de la Policía de Puerto Rico para portar dicha arma, ya que era agente del orden público, no tiene licencia para la portación de la misma a tenor con la Ley de Armas debidamente expedida por el Tribunal de Primera Instancia y portó la misma en circunstancias no cubiertas por dicho permiso.** Portó la misma en un negocio de bebidas alcohólicas (Ibos Sport Bar), a la 1:00 a.m. bajo los efectos de bebidas embriagantes y **utilizó la misma para dispararle en más de tres ocasiones a un ciudadano.**[12]

Subsiguientemente, el señor Negrón presentó una _Moción al amparo de la Regla 64(p) de Procedimiento Criminal_ en la que solicitó la desestimación de la acusación por el Art. 5.04 de la Ley de Armas, _supra_.[13] De acuerdo a este, la determinación de causa para acusar por el referido precepto fue contraria a derecho, ya que durante la vista

---

[11] Íd., _Acusaciones_, págs. 27-35.

[12] (Énfasis suplido). Íd., pág. 30.

[13] Íd., _Moción al amparo de la Regla 64(p) de Procedimiento Criminal,_ págs. 36-38.

preliminar hubo ausencia total de prueba sobre la portación ilegal del arma de fuego. Esto porque de los testimonios ofrecidos surge que a la fecha de los delitos imputados, el señor Negrón tenía una licencia y/o permiso válidamente expedido por la Policía de Puerto Rico para portar su arma de reglamento en todo momento. Específicamente, el señor Negrón planteó que:

> [d]e la prueba presentada y desfilada [en] la vista preliminar en alzada[14] surge claramente que el Sr. Elvin Negrón estaba autorizado a poseer y portar un arma de fuego con el permiso otorgado por la Policía de PR por lo que no es necesario tener una licencia expedida por el Tribunal de Primera Instancia del ELA. Cabe destacar, que todo miembro de la Policía de PR por el solo hecho [d]e pertenecer a dicha Agencia se le autoriza a portar su arma de fuego en todo momento.[15]

Para la evaluación de este petitorio, las partes presentaron una *Exposición Narrativa de la Prueba* mediante la cual estipularon los testimonios vertidos en la vista preliminar, así como las declaraciones juradas ofrecidas por el agente Raúl Acosta Pabón y el señor Rosado Capeles.[16] Evaluados los mismos, el Tribunal de Primera Instancia concluyó que existía ausencia total de prueba, ya que el señor Negrón "estaba autorizado a transportar y

---

[14] En varios documentos contenidos en el expediente se hace referencia a una vista preliminar en alzada. No obstante, en el caso de autos no se celebró vista preliminar en alzada. La determinación de causa probable para acusar se produjo en la vista preliminar y posterior a ello la defensa presentó la correspondiente petición de desestimación al amparo de la Regla 64(p) de Procedimiento Criminal, <u>supra</u>.

[15] Íd., pág. 37, ¶13.

[16] Íd., *Exposición narrativa de la prueba*, págs. 40-44. Véase, además, íd., *Declaración jurada del agente Raúl Acosta Pabón del 9 de septiembre de 2010* y *Declaración Jurada del Sr. Juan José Rosado Capeles del 8 de septiembre de 2010*, págs. 45-46; 47-48, respectivamente.

portar arma de fuego y con licencia de armas expedida por el Superintendente de la Policía".[17] Como consecuencia, declaró con lugar la solicitud de desestimación del cargo por el Art. 5.04 de la Ley de Armas, supra.[18]

No contestes con esta determinación, el Estado acudió al Tribunal de Apelaciones mediante un recurso de certiorari.[19] En esencia, expuso que la tenencia de una licencia para portar armas no impide la formulación de cargos bajo el Art. 5.04 del referido cuerpo legal, particularmente cuando es "…utilizada para propósitos ilícitos o no autorizados…".[20] En ese sentido, sostuvo que "…en la medida que el recurrido utilizó su arma de reglamento para cometer un delito grave (tentativa de asesinato), debe responder criminalmente por el Art. 5.04 de la Ley de Armas…".[21] Siendo así, arguyó que el Tribunal de Primera Instancia erró al desestimar la acusación por el mencionado cargo.

Atendido este planteamiento, el 3 de octubre de 2012 el Tribunal de Apelaciones notificó una sentencia en la cual revocó la determinación del foro primario.[22] Fundamentado, esencialmente, en Pueblo v. Rodríguez Polanco, 106 DPR 228

---

[17] Íd., Resolución, págs. 17-19.

[18] Íd., Sentencia, pág. 20.

[19] Íd., Petición de Certiorari, págs. 1-15. El señor Negrón no reaccionó a esta petición, por lo que el foro intermedio apelativo resolvió a base del escrito presentado por el Estado.

[20] Íd., pág. 7.

[21] Íd., pág. 9.

[22] Íd., Sentencia, págs. 49-59.

(1977), el tribunal concluyó que debía subsistir la acusación que se presentó en contra del señor Negrón por la infracción al Art. 5.04 de la Ley de Armas, supra. Al respecto, el foro apelativo intermedio razonó que:

> [e]l hecho de que la prueba presentada por el Ministerio Público, durante la vista preliminar, no apuntara a probar que el recurrido carecía de licencia de armas o permiso para portar armas de fuego, no justificaba la aplicación de la Regla 64(p) de Procedimiento Criminal. **Si bien medió ausencia de prueba sobre la consumación de ese elemento del delito objeto de la acusación, erró el TPI al acoger la petición del recurrido.**
>
> La licencia de un agente de la Policía para portar el arma de reglamento, como cualquier otra licencia o permiso sobre ese particular, está supeditada a los términos autorizados. El hecho de que el recurrido tuviera permiso para la portación de su arma de reglamento, no significa que dicha autorización fuera irrestricta. El recurrido no está exento, a *priori*, de una imputación o eventual acusación por una violación al Art. 5.04 de la Ley de Armas. […]
>
> Sin ánimos de prejuzgar el asunto, puede inferirse razonablemente que el uso del arma de reglamento en un supuesto como el alegado en los pliegos acusatorios presentados contra el recurrido, distan de las obligaciones que la misma Ley Habilitadora de la Policía le impone a los miembros del cuerpo. En resumen, la jurisprudencia es clara en que la tenencia de una licencia o permiso para portar armas no impide la imputación ni la acusación por la conducta proscrita de un arma de fuego sin licencia.[23]

Inconforme con esta determinación, el señor Negrón presentó una *Moción de Reconsideración*, pero la misma fue

---

[23] (Énfasis suplido). Íd., págs. 58-59.

denegada.[24] No conforme aún, este acudió ante nos mediante un recurso de *certiorari*. En resumen, arguyó que el Tribunal de Apelaciones erró al "revocar el dictamen del T.P.I. el cual resolvió que el Art. 5.04 de la Ley de Armas no lo infringe un Policía cuando hace uso de su arma de reglamento".[25] Examinado el recurso, lo expedimos en reconsideración el 26 de abril de 2013.

Oportunamente, tanto el señor Negrón como el Ministerio Público, presentaron sus respectivos alegatos. Por una parte, el señor Negrón reiteró que no puede ser acusado por el delito de portación y uso de armas de fuego sin licencia tipificado en el Art. 5.04 de la Ley de Armas, supra. Esto porque para la fecha de los hechos estaba autorizado a portar su arma de reglamento, como claramente surgió de la prueba desfilada durante la vista preliminar. No obstante, arguyó que ante una alegación de apuntar y disparar con su arma de reglamento en circunstancias no cubiertas por la ley, lo que procede es una acusación por el delito así tipificado en el Art. 5.15 de la Ley de Armas, supra.[26] En vista de ello, solicitó que ordenemos la desestimación de la acusación por infracción al Art. 5.04.[27]

---

[24] Íd., *Moción de reconsideración*, págs. 60-74. Véase, además, íd., *Resolución*, págs. 75-77.

[25] Íd., *Petición de Certiorari*, pág. 5.

[26] Íd., *Alegato del Peticionario*, pág. 24.

[27] Como parte de su análisis, el señor Negrón plantea que las decisiones anteriores emitidas por este Tribunal en las que abordamos el delito de portación ilegal bajo la derogada ley de armas – Ley Núm.

Por su parte, el Ministerio Público sostuvo en su alegato que sí procede la acusación por el delito de portación y uso de armas de fuego sin licencia. Según explicó, el señor Negrón violó los términos del permiso de portación concedido por la Policía de Puerto Rico al utilizar su arma de reglamento para cometer un delito grave.[28] Siendo así, el Ministerio Público concluye que este incurrió en el delito de portación y uso de armas de fuego sin licencia. En ese análisis, nos invita a acoger la "interpretación análoga"[29] que hiciéramos en Pueblo v. Rodríguez Polanco, supra.

Con este cuadro fáctico y el beneficio de la comparecencia de ambas partes, procedemos a exponer el marco legal aplicable a la controversia que nos ocupa.

II

A. Aspectos procesales

Como asunto de umbral a la resolución del presente caso, debemos tener presente la etapa procesal en que el mismo llega ante nuestra consideración. Como bien surge de la exposición de hechos que antecede, la controversia que atendemos se originó cuando el Tribunal de Primera Instancia concedió una moción de desestimación al amparo de la Regla 64(p) de Procedimiento Criminal, supra.

---

17 de 19 de enero de 1951 - no son aplicables. Particularmente, Pueblo v. Vega Pabón, 144 DPR 416 (1997); Pueblo v. Vázquez Cintrón, 122 DPR 625 (1988); Pueblo v. Granada, 113 DPR 558 (1982); Pueblo v. Rodríguez Polanco, 106 DPR 228 (1977).

[28] Íd., Alegato del Pueblo, pág. 22.

[29] Íd., pág. 10.

Dictamen que fue eventualmente revocado por el foro apelativo intermedio. En ese escenario, nuestra revisión debe estar delimitada por dos aspectos principales. *Primero,* los principios que gobiernan el proceso de determinación de causa probable para acusar. Particularmente, en lo referente al grado de prueba que el Ministerio Público está obligado a presentar en la etapa de vista preliminar. *Segundo*, los criterios que rigen una correcta revisión de una moción de desestimación al amparo de la Regla 64(p) de Procedimiento Criminal, supra.

### 1. **Procedimiento de determinación de causa probable para acusar**

En lo que concierne al primer aspecto, nuestra legislación expresamente dispone que toda persona imputada de un delito grave tiene derecho a la celebración de una vista preliminar.[30] Es decir, estatutariamente se reconoce la celebración de una vista adversativa inicial en la que se debe determinar que existe causa probable en cuanto a dos asuntos: (1) que se cometió el delito grave imputado y; (2) que la persona imputada es quien lo cometió.[31] En este contexto, ante una denuncia por un delito grave, una determinación de causa probable para arrestar resulta

---

[30] En lo pertinente, la Regla 23(a) de Procedimiento Criminal dispone que "[s]e celebrará una vista preliminar en aquel caso en que se imputare a una persona un delito grave (*felony*)". 34 LPRA Ap. II, R. 23(a).

[31] Sobre este particular, la Regla 23(c) de Procedimiento Criminal, supra, dispone, en su parte pertinente, lo siguiente: "[s]i a juicio del magistrado la prueba demostrare que existe causa probable para creer que se ha cometido un delito y que la persona lo cometió, el magistrado detendrá inmediatamente a la persona para que responda por la comisión de un delito ante la sección y sala correspondiente del Tribunal de Primera Instancia".

insuficiente. Por lo tanto, el Ministerio Público debe obtener una determinación de causa probable para acusar, lo cual en términos prácticos representa la debida autorización al Estado para presentar las acusaciones correspondientes. Pueblo v. Rivera Vázquez, 177 DPR 868, 876 (2010); Pueblo v. García Saldaña, 151 DPR 783, 789 (2000); Pueblo v. Jiménez Cruz, 145 DPR 803, 815 (1998).[32]

Ahora bien, es importante tener presente que el proceso de causa probable para acusar no supone la celebración de un mini juicio. Pueblo v. Rivera Cuevas, 181 DPR 699, 706 (2011); Pueblo v. Rivera Vázquez, supra, págs. 875-876; Pueblo v. Rodríguez Aponte, 116 DPR 653, 665 (1985). Esto porque el objetivo de la vista preliminar no es establecer la culpabilidad del imputado más allá de duda razonable, sino constatar que, en efecto, el Estado cuenta con una adecuada justificación para continuar con un proceso judicial más extenso y profundo. Pueblo v. Ortiz, Rodríguez, 149 DPR 363, 374 (1999); Pueblo v. Rodríguez Aponte, supra, pág. 664. Ello, a fin de evitar que una persona sea sometida injustificada e irrazonablemente a los rigores y penurias de un juicio en su fondo. Pueblo v. Fernández Rodríguez, 183 DPR 770, 798 (2011); Pueblo v. Rivera Vázquez, supra, pág. 875; Pueblo

---

[32] Véase, además, E.L. Chiesa, Derecho procesal penal de Puerto Rico y Estados Unidos, Colombia, Ed. Forum, 1993, vol. 3, págs. 93-94. Si bien una determinación de causa probable autoriza al Ministerio Público a presentar la acusación por el delito grave, este no está obligado a hacerlo. Sobre el particular, véase, la Regla 24(b) de Procedimiento Criminal, supra.

v. García Saldaña, 151 DPR 783, 788 (2000); Pueblo v. Rivera Rodríguez, 138 DPR 138, 142 (1995).[33]

Para cumplir con tales objetivos de la vista preliminar, el Ministerio Público no está obligado a presentar toda la prueba de cargo. Únicamente debe presentar aquella prueba necesaria para establecer la causa probable en cuanto a la comisión del delito grave y su conexión con el imputado. Pueblo v. Rivera Cuevas, supra, pág. 705; Pueblo v. Rodríguez Aponte, supra, pág. 664.[34] Específicamente, hemos definido la responsabilidad probatoria del Ministerio Público durante esta etapa como una *scintilla* de evidencia que dé paso a una determinación *prima facie* sobre los dos aspectos mencionados. Pueblo v. Rivera Cuevas, supra, pág. 706; Pueblo v. Andaluz Méndez, 143 DPR 656, 677 (1997); Pueblo v. Nazario Hernández, 138 DPR 760, 781 (1995).

Ahora bien, a pesar de no estar obligado a presentar toda la evidencia de cargo, el Estado debe tener presente dos aspectos al momento de seleccionar qué evidencia ofrecerá durante la vista preliminar. En primer lugar, la prueba ofrecida debe ser una admisible en el juicio, conforme a los parámetros establecidos en nuestras reglas de evidencia.[35] En segundo lugar, la evidencia presentada

---

[33] Véase, además, E.L. Chiesa, op. cit., págs. 63-64.

[34] Véase, además, E.L. Chiesa, op. cit., pág. 91; D. Nevares-Muñiz, Sumario de derecho procesal penal puertorriqueño, 9na ed., San Juan, Ed. Instituto de Desarrollo del Derecho, 2007, págs. 109-110.

[35] A pesar de que las Reglas de Evidencia no obligan durante la vista preliminar, excepto en lo que concierne a materia de privilegios y

debe reflejar cada uno de los elementos del delito imputado y su conexión con la persona imputada. Acorde con ello, en reiteradas ocasiones hemos expresado que "el Ministerio Público debe presentar evidencia legalmente admisible en un juicio plenario, sobre **todos** los elementos del delito imputado en la denuncia y su conexión con el imputado". (Énfasis y subrayado nuestro). Pueblo v. Rivera Cuevas, supra. Pueblo v. Andaluz Méndez, 143 DPR 656, 662 (1997); Pueblo v. Rivera Alicea, 125 DPR 37, 42 (1989); Pueblo v. Rodríguez Aponte, supra, pág. 664.

2. **Revisión de la determinación de causa probable para acusar**

Determinada la causa probable para acusar conforme a lo establecido en la sección anterior, y posterior a la presentación de la acusación, el entonces acusado puede presentar una moción de desestimación al amparo de la Regla 64(p) de Procedimiento Criminal, supra. La referida moción constituye el remedio procesal adecuado mediante el cual el acusado puede solicitar la desestimación de la acusación, o alguno de los cargos incluidos en esta, cuando la misma ha sido presentada "sin que se hubiera determinado causa probable por un magistrado… con arreglo a la ley y a derecho".[36]

---

conocimiento judicial, la determinación de causa probable para acusar debe efectuarse con evidencia admisible en el juicio. Véase, Regla 103(F) de las Reglas de Evidencia, 32 LPRA Ap. V., R. 103(F).

[36] 34 LPRA Ap. II, R. 64(p). Específicamente, la regla dispone como uno de los fundamentos para solicitar la desestimación del pliego acusatorio "[q]ue no se ha presentado contra el acusado una acusación o denuncia, o algún cargo de las mismas, sin que se hubiere determinado causa probable por un magistrado u ordenado su detención para responder del delito, con arreglo a la ley y a derecho". Íd. Como

Cónsono con el citado texto, en ocasiones anteriores hemos reconocido que procede la desestimación de una acusación al amparo de la Regla 64(p) en dos escenarios particulares. Primero, en aquellas circunstancias en las que se determine causa probable para acusar, a pesar de la ausencia total de prueba sobre alguno de los elementos del delito imputado o de su conexión con el acusado. Véase, e.g., Pueblo v. González Pagán, 120 DPR 684 (1988); Pueblo v. Pérez Suárez, 116 DPR 807 (1986). Segundo, cuando se haya infringido alguno de los requisitos o derechos procesales que se deben observar durante la vista preliminar. Véase, e.g., Pueblo v. Kelvin Branch, 154 DPR 575 (2001); Pueblo v. Padilla Flores, 127 DPR 698 (1991).[37]

Como todo dictamen judicial, la determinación de causa probable para acusar goza de una presunción de corrección.[38] Siendo así, le corresponde al acusado persuadir al tribunal de que la determinación de causa probable no fue conforme a derecho bajo alguno de los escenarios reconocidos bajo la Regla 64(p) de Procedimiento Criminal, supra. Pueblo v. Andaluz Méndez, 143 DPR 656, 662 (1997); Pueblo v. Echevarría Rodríguez,

---

bien surge de la citada disposición, la misma es aplicable tanto para delitos menos graves posterior a la determinación de causa probable para el *arresto* como para delitos graves posterior a la determinación de causa probable para *acusar*. No obstante, en esta sección B únicamente haremos referencia en el contexto de cuando se acusa por un delito grave, ya que esas son las circunstancias que corresponden al caso de autos.

[37] Véase, además, O.E. Resumil, Práctica Jurídica de Puerto Rico, New Hampshire, Ed. Butterworth, 1993, Vol. 2, pág. 196.

[38] Véase, Regla 304, inciso 31, de las Reglas de Evidencia. 32 LPRA Ap. V., R. 304.

128 DPR 752, 809 (1991).[39] En el caso particular del primer escenario, hemos enfatizado que el criterio rector debe ser total ausencia de prueba. Pueblo v. Rivera Cuevas, supra, pág. 708; Pueblo v. Rivera Vázquez, supra, pág. 878; Pueblo v. Tribunal Superior, 104 DPR 454, 459 (1975). En otros términos, el acusado que impugne una determinación de causa probable bajo el fundamento de que no se presentó prueba sobre alguno de los elementos del delito o su conexión con este, debe demostrar que, en efecto, durante el procedimiento no se desfiló prueba alguna sobre el particular. Únicamente en **ausencia total de prueba** durante la determinación de causa probable es que procede la desestimación de la acusación impugnada. Pueblo v. Rivera Cuevas, supra, pág. 708; Pueblo v. Rivera Vázquez, supra, págs. 878-879.[40]

En ese contexto, el magistrado que evalúe una moción de desestimación al amparo de la Regla 64(p) debe tener presente que no se trata de una nueva determinación de causa probable. Por lo tanto, si el tribunal entiende necesario la celebración de una vista para dilucidar la referida moción, su tarea estará limitada a examinar la prueba presentada durante la vista en que se determinó causa probable para acusar. Evaluada **exclusivamente** tal prueba, el magistrado debe determinar si hubo ausencia total de prueba sobre la comisión del delito – ya sea

---

[39] Véase, además, E.L. Chiesa, op.cit., pág. 94.

[40] Véase, además, E.L. Chiesa, op. cit., pág. 257.

porque no se presentó *alguna evidencia* sobre un elemento del delito imputado o porque no se presentó *alguna evidencia* sobre la conexión del acusado con el delito. Solamente ante una situación de ausencia total de prueba es que procede sustituir el criterio del magistrado que inicialmente halló causa para acusar.

B. <u>Aspectos sustantivos</u>

Aclarados los aspectos procesales aplicables al caso de autos, nos corresponde abordar los aspectos sustantivos ante nuestra consideración. Nótese que la tesis del señor Negrón, en esencia, se circunscribe a alegar que no puede ser acusado por el cargo de portación y uso de armas de fuego sin licencia, tipificado en el Art. 5.04 de la Ley de Armas, <u>supra</u>, porque como miembro de la Policía de Puerto Rico está autorizado a portar su arma de reglamento. En ese particular, arguye que si, en efecto, cometió un delito se trata de uno distinto al tipificado en el referido artículo, por lo que mantener tal acusación contraviene el principio de legalidad. Por su parte, el Ministerio Público sostiene que el señor Negrón debe ser acusado por el delito contenido en el Art. 5.04 porque así lo hemos avalado en el pasado en circunstancias *similares* al momento de interpretar disposiciones "análogas" bajo la hoy derogada legislación de armas.

En atención a ambos planteamientos, resulta preciso que abordemos, principalmente, cuatro asuntos. En primer lugar, debemos revisar los supuestos que rigen el

principio de legalidad, particularmente en lo referente a su vertiente de delitos por analogía. Como segunda cuestión, nos corresponde repasar cuál era el marco general bajo el cual se concedía un permiso de portación de un arma de fuego bajo la derogada Ley de Armas.[41] Asimismo, revisaremos cómo la legislación tipificaba el delito de portación ilegal, en conjunto a su correspondiente jurisprudencia interpretativa. En tercer lugar, repasaremos el marco legal vigente bajo el cual una persona puede obtener un permiso para portar un arma de fuego en comparación con el permiso que obtienen los miembros de la Policía de Puerto Rico. Finalmente, evaluaremos cómo la actual Ley de Armas de Puerto Rico,[42] tipifica el delito de portación ilegal.

## 1. **Principio de legalidad**

Un principio medular de nuestro ordenamiento jurídico penal es que ninguna persona puede ser penalmente responsable por una conducta que <u>de antemano</u> la ley no haya definido <u>claramente</u> como delito.[43] Así como tampoco puede exponerse a consecuencias penales distintas a las que establezca la ley. Bajo el derogado Código Penal de

---

[41] Ley Núm. 17 de 19 de enero de 1951, Ley de Armas de Puerto Rico. (25 LPRA ant. secs. 411-454).

[42] Ley Núm. 404-2000, Ley de Armas de Puerto Rico. (25 LPRA secs. 455 – 460(k)).

[43] El Art. 15 del Código Penal definía el término "delito" como aquel "…acto cometido u omitido en violación de alguna ley que lo prohíbe u ordena, que apareja, al ser probado, alguna pena o medida de seguridad". Art. 15 de la derogada Ley Núm. 149-2004, Código Penal de Puerto Rico.

2004, este principio estaba establecido en el Art. 2, el cual disponía lo siguiente:

> [n]o se instará acción penal contra persona alguna por un hecho que no esté **expresamente definido como delito** en este Código o mediante ley especial, ni se impondrá pena o medida de seguridad que la ley no establezca con anterioridad a los hechos.[44]

Como parte esencial de este principio de legalidad que establece el citado precepto, el derogado Código Penal establecía una clara prohibición de la analogía en la definición de los delitos y las penas. Al respecto, vemos que el Art. 3 disponía que "[n]o se podrán crear ni imponer por analogía delitos, penas, ni medidas de seguridad".[45] Cónsono con ello, la conducta que constituya delito será aquella prevista específicamente en la descripción literal del tipo. Pueblo v. González Vega, 147 DPR 692, 700 (1999). Pueblo v. Báez Ramos, 149 DPR 469, 482 (1999). Es por ello, que los tribunales no tenemos autoridad para considerar como constitutivos de delito hechos distintos a los consignados en el Código Penal o en alguna ley especial. Tampoco podemos imponer sanciones penales no contempladas en la ley. Pueblo v. Figueroa Garriga, 140 DPR 225, 231 (1996).[46]

---

[44] (Énfasis suplido). Art. 2 de la derogada Ley Núm. 149, supra. (33 LPRA ant. sec. 4631).

[45] Art. 3 de la derogada Ley Núm. 149, supra. (33 LPRA ant. sec. 4632).

[46] Estas consecuencias prácticas que supone el principio de legalidad en nuestra función adjudicativa adelanta varios propósitos, entre las cuales destaca la garantía de seguridad que se le brinda al ciudadano de que la ley no será aplicada arbitrariamente y promovemos, así, una estabilidad a nuestro estado de derecho. Véase, e.g., Francisco Muñoz Conde & Mercedes García Aran, Derecho Penal: parte general 107 (Tirant

Ahora bien, lo anterior no implica que cada hecho constitutivo de delito deba desprenderse de una simple lectura de la ley, ya que todas las leyes, incluyendo las de índole penal, están sujetas a interpretación. Conforme a ello, ante una duda de qué es lo que constituye delito bajo determinada disposición penal, el tribunal debe aplicar los correspondientes principios de hermenéutica, lo cual podría resultar en alcanzar una interpretación restrictiva o extensiva del delito.[47] En lo que respecta a la primera posibilidad, debemos tener presente que el principio de legalidad no obliga a que de antemano adoptemos una interpretación restrictiva cuando inicialmente surge una duda sobre qué dispone el delito. Si luego de un ejercicio de interpretación, permanece la duda, debemos entonces resolver a favor del acusado como consecuencia del principio de legalidad.[48]

Por su parte la interpretación extensiva del delito es permitida siempre y cuando la misma no sobrepase el sentido literal posible del estatuto penal. No obstante, este ejercicio no debe ser confundido, y mucho menos debe guiarnos, a una aplicación por analogía, lo cual está prohibido como consecuencia directa del principio de

---

Lo Blanch, 7ma ed. 2007). Véase, además, Enrique Bacigalupo, Derecho Penal: parte general 106 (Hammurabi, 2da ed. 1999).

[47] El tratadista penal Santiago Mir Puig ha planteado que "[l]a interpretación es lítica aunque resulte extensiva de delitos o penas…". S. Mir Puig, Derecho Penal: Parte General, 8va ed., Buenos Aires-Montevideo, B de la F. Ltda., 2008, pág. 115.

[48] Véase, E. L. Chiesa Aponte, Derecho Penal, 66 Rev. Jur. UPR 513, 513-521 (1997).

legalidad. Sobre este particular, el tratadista Mir Puig nos aclara lo siguiente:

> [l]a diferencia entre interpretación (siempre permitida si es razonable y compatible con los valores constitucionales) y analogía (prohibida si perjudica al reo) es la siguiente: mientras que la interpretación es la búsqueda de un sentido del texto legal que se halle dentro de su <<*sentido literal posible*>>, la analogía supone la aplicación de la ley penal en un supuesto no comprendido en ninguno de los sentidos posibles de su letra, pero *análogo* a otros sí comprendidos en el texto legal.[49]

En términos de la profesora Dora Nevares Muñiz, la analogía consiste "en aplicar la ley a unos hechos no contemplados por esa ley, pero parecidos a los allí contemplados".[50] De esta manera, añade que la prohibición contemplada en el Art. 3 del Código Penal "impide que el juez juzgue o sancione a una persona por una conducta no tipificada como delito a base de su semejanza con una tipificada como tal".[51]

## 2. Portación de armas de fuego bajo la derogada Ley de Armas de 1951

Bajo la hoy derogada Ley de Armas de 1951 se reconocían distintos tipos de licencia que autorizaban a personas particulares a portar un arma de fuego. Así, por ejemplo, la ley autorizaba al Superintendente de la Policía a conceder una licencia para tener y poseer un arma de fuego a todo jefe de familia, agricultor o

---

[49] S. Mir-Puig, op. cit.

[50] D. Nevares-Muñiz, Código Penal de Puerto Rico, Instituto para el Desarrollo del Derecho, Inc., ed. 2012, pág. 3.

[51] Íd. Véase, además, R. Ortega-Vélez, Código Penal de Puerto Rico (2004), Ed. Chrisely, Puerto Rico, ed. 2007, pág. 14.

comerciante que lo solicitare, si estos cumplían con los requisitos establecidos en la ley. Esta licencia incluía unas limitaciones expresas sobre dónde la persona podía portar su arma, dependiendo de la categoría bajo la cual solicitara la misma. Al respecto, el Art. 15 de la Ley de Armas de 1951 disponía, en su parte aquí pertinente, lo siguiente:

> [e]l Superintendente de la Policía de Puerto Rico, al presentársele solicitud para ello por cualquier jefe de familia, comerciante o agricultor, y siempre que se cumplan los requisitos que más adelante se disponen, podrá expedir a tal solicitante una licencia para tener y poseer una pistola o revólver y autorizándole, si jefe de familia, a tener y poseer tal arma en su residencia, o si comerciante, a tener y poseer un arma en su sitio de negocios o, si agricultor, un arma en su finca rústica. **La licencia que por esta sección se dispone no autoriza a portar dichas armas fuera de la residencia, sitio de negocio o finca rústica según sea el caso.**[52]

De esta manera, observamos que la licencia concedida bajo el citado artículo específicamente limitaba el lugar donde la persona podía portar legalmente el arma de fuego. Así, si la licencia se otorgaba bajo la categoría de jefe de familia, la persona estaba autorizada a portar el arma única y exclusivamente en su residencia. Paralelo a ello, si la licencia se concedía bajo la categoría de comerciante, la portación autorizada se circunscribía al lugar de su negocio. Mientras que si la licencia concedida fue en calidad de agricultor, la persona no podía portar el arma más allá de su finca rústica. En ese sentido, la

---

[52] (Énfasis y subrayado suplido). Art. 15 de la Ley Núm. 17, supra. (25 LPRA ant. sec. 425).

legalidad de la portación estaba delimitada por un asunto de lugar.

Por otra parte, más allá de tales categorías, la legislación derogada establecía que cualquier persona que sintiera, y así lo demostrase, peligro de muerte o de grave daño personal podía obtener una licencia para portar un arma de fuego.[53] Para ello, debía acudir a su sala correspondiente del Tribunal de Primera Instancia y demostrar pleno cumplimiento con los requisitos establecidos en la ley. Si el tribunal entendía que la persona había justificado la necesidad de la licencia, este debía emitir la misma e incluir la siguiente información:

(a) La duración de la misma… .

**(b) [el] lugar, tiempo y circunstancias en que podrá portarse el arma;**

(c) [la] descripción del arma cuya portación se autoriza, con expresión de su número de serie si lo tuviere;

(d) [los] motivos en que funda la concesión; [y]

(e) [las] causas que originarán su renovación.[54]

En otros términos, la propia ley de armas especificaba cuál era la información que el tribunal debía incluir al momento de conceder la licencia de portación. Entre la información requerida, resalta el hecho de que la ley especificaba que el tribunal debía incluir el lugar,

---

[53] Véase, Art. 21 de la Ley Núm. 17, supra. (25 LPRA ant. sec. 431).

[54] (Énfasis suplido). Íd.

el tiempo y las circunstancias en que la persona estaba autorizada a portar el arma de fuego.

Aclarado cuál era el marco general que establecía la otrora Ley de Armas, veamos cómo esta tipificaba el delito de portación ilegal y la jurisprudencia que emitimos en aquel entonces sobre el particular.

3. <u>**Delito de portación ilegal bajo la derogada Ley de Armas de 1951**</u>

El delito de portación ilegal estaba tipificado en dos artículos distintos. Por un lado, el Art. 7 de la Ley Núm. 17, <u>supra</u>, tipificaba el delito de portación o uso de armas de fuego sin licencia como:

> [t]oda persona que porte, conduzca o transporte cualquier pistola, revólver u otra arma de fuego **sin tener licencia para ello** expedida como más adelante se dispone, será culpable de delito menos grave, y si ha sido convicta con anterioridad de cualquier infracción a este capítulo o de cualquiera de los delitos especificados en la sec. 427 de este título, o usare el arma en la comisión de uno de dichos delitos, será culpable de delito grave.[55]

Mientras que el Art. 8 de la referida legislación tipificaba el delito de portación sin licencia de armas *cargadas o sus municiones a la vez*. Este leía de la manera siguiente:

> [t]oda persona que porte, conduzca o transporte cualquier pistola, revólver o cualquier otra arma de fuego cargada, o que porte, conduzca o transporte cualquier pistola, revólver o cualquier otra arma de fuego y al mismo tiempo porte, conduzca o transporte municiones que puedan usarse para disparar tal pistola, revólver u otra arma de fuego, **sin tener una licencia para portar armas** expedida según más

---

[55] (Énfasis suplido). Art. 7 de la Ley Núm. 17, <u>supra</u>. (25 LPRA ant. sec. 417).

adelante se dispone, será culpable de delito grave.[56]

Como resaltamos, ambos artículos sujetaban el delito de portación ilegal de un arma de fuego a la ausencia de licencia de portación. No obstante, bajo estas disposiciones emitimos varias opiniones en las que delimitamos bajo qué circunstancias se configuraba este delito, aun cuando la persona contara con licencia para portar. Como expondremos más adelante, en cada uno de los casos en que nos enfrentamos a un planteamiento como este, nuestro análisis estuvo dirigido a comparar dónde se autorizó a portar el arma de fuego versus en qué lugar ocurrió la presunta portación ilegal. En ese análisis, el énfasis siempre estuvo en dónde <u>portó</u> el arma, es decir, si estaba autorizado a portarla en ese lugar en particular.

Así, por ejemplo, en <u>Pueblo v. Díaz Díaz</u>, 91 DPR 759 (1965), confirmamos la sentencia recurrida por portación ilegal, aun cuando el convicto contaba con licencia expedida por el Jefe de la Policía, porque portó la misma en un lugar no autorizado. Al respecto, en el citado caso expresamos lo siguiente:

> [t]ambién sostiene que son erróneas las instrucciones sobre portación ilegal de armas y que omitió darlas sobre el alcance y extensión de una licencia para tener y poseer un arma y sobre su portación incidental. Se basa en parte

---

[56] (Énfasis suplido). Art. 8 de la Ley Núm. 17, <u>supra</u>. (25 LPRA ant. sec. 418). El Art. 8(a) de la Ley Núm. 17, <u>supra</u>, también establecía el delito de portación ilegal, pero en otra modalidad en cuanto al tipo de armas, a saber: ametralladora, escopeta, entre otras. Véase, Art. 8(a) de la Ley Núm. 17, <u>supra</u>. (25 LPRA ant. sec. 418a).

este apuntamiento en el hecho de que **el apelante tenía una licencia expedida por el Jefe de la Policía para, como argumenta, tener un arma en su finca, y los hechos ocurrieron en un establecimiento de su propiedad sito dentro de la finca. <u>La dificultad estriba en que el negocio en sí no pertenecía al acusado; estaba arrendado a una tercera persona</u>**. (Énfasis y subrayado nuestro). Íd., págs. 764-765.

Posteriormente, en <u>Pueblo v. Rodríguez Polanco</u>, supra, nos enfrentamos a una situación en que un **comerciante** fue hallado culpable del delito de portación ilegal tipificado en el Art. 8 de la Ley Núm. 17, <u>supra</u>, aun cuando poseía una licencia válida para portar armas de fuego. En aquella ocasión destacamos que, conforme a las citadas disposiciones del Art. 21 de la Ley de Armas de 1951, <u>supra</u>, la licencia concedida al señor Rodríguez Polanco contenía dos limitaciones. *Primero*, la licencia establecía que la portación sería válida exclusivamente en los distritos judiciales de San Juan, Ponce y Caguas. *Segundo*, la licencia disponía que la portación sería válida únicamente mientras realizara labores o actos comerciales de transportar "fuertes sumas de dinero". Íd., págs. 229-230. Siendo así, el señor Rodríguez Polanco <u>únicamente</u> estaba autorizado a portar el arma en los municipios que comprendieran los mencionados distritos judiciales y en circunstancias en que transportara dinero por razón de sus actividades como comerciante.

Ahora bien, contrario a esas dos expresas limitaciones, el señor Rodríguez Polanco fue acusado por portar su arma en el distrito de Guayama – distrito no

autorizado - y en circunstancias no relacionadas a sus labores comerciales. Sobre ese particular, en el referido caso consignamos que del expediente se desprendía que:

> … el acusado se personó al Templo Pentecostal en Guayama. El acusado comenzó a burlarse de las personas que participaban en el culto religioso. Profería palabras obscenas. … Se llamó a la policía para que atendiese la situación. … El policía logró conducirlo fuera del templo. Afuera ocurrió un forcejeo… . El acusado sacó su revólver e hirió de muerte al policía. Íd., pág. 231.

En ese entorno, confirmamos los veredictos apelados, incluyendo el dictamen de culpabilidad por portación ilegal tipificado en el Art. 8, supra, ya que el señor Rodríguez Polanco incumplió las condiciones de portación expresamente establecidas en la licencia concedida. Al así hacerlo, enunciamos que:

> [n]o cabe duda de que las licencias sólo autorizan a portar un arma legalmente en el lugar, tiempo y circunstancias expresados en ella. Para que la portación sea válida, en recta interpretación del Art. 8 citado, debe contarse con una licencia debidamente expedida y portarse el arma conforme a sus términos. Íd.

Subsiguientemente, en Pueblo v. Vázquez Cintrón, supra, atendimos el reclamo de un **jefe de familia**, quien contaba con licencia para poseer y portar un arma, conforme a las disposiciones del Art. 15 de la Ley Núm. 17, supra.[57] Al igual que en el caso anterior, el señor Vázquez Cintrón argumentaba que no podía ser acusado por infracción al Art. 8, supra, ya que contaba con una licencia para portar. Ante ese reclamo, procedimos a

---

[57] 25 LPRA ant. sec. 425.

evaluar específicamente la disposición del Art. 15, bajo la cual se le concedió la mencionada licencia. Como indicáramos en la sección anterior, el referido artículo expresamente establecía que la persona que recibiera una licencia de portación bajo la categoría de jefe de familia no podía portar el arma de fuego más allá de los límites de su residencia.

Como comentario a lo establecido en el mencionado Art. 15, supra, expresamos que:

> [d]el mismo se desprende con meridiana claridad que toda persona que como jefe de familia, comerciante o agricultor le haya sido expedida una licencia de tener y poseer un arma de fuego por el Superintendente de la Policía **podrá no sólo poseer sino que portar dicha arma de fuego en su residencia y dentro de los linderos, límites y colindancias de la misma, o de su sitio de negocio o de su finca, según sea el caso,** y que dicho ciudadano infringirá el Art. 8 de la Ley de Armas de Puerto Rico, ante, siempre que porte, conduzca o transporte dicha arma de fuego más allá de los límites de su residencia, negocio o finca, respectivamente, independientemente del hecho de que dicha portación ocurra o no en una vía pública. Íd., pág. 631.

En vista de lo anterior, en el caso particular de *Vázquez Cintrón* concluimos que:

> …el apelante – quien tenía licencia para tener y poseer como jefe de familia, el arma de fuego en controversia en su residencia – **portó, condujo y transportó la misma <u>fuera de las colindancias o límites de la misma</u>,** portando dicha arma de fuego no sólo por el camino vecinal en controversia sino que en la residencia de su hijo de crianza. Al así hacerlo, infringió el Art. 8 de la Ley de Armas de Puerto Rico, ante, … . (Énfasis y subrayado nuestro). Íd., pág. 632.

Cónsono con la resolución del caso anterior, atendimos la controversia presentada unos años más tarde en Pueblo v. Vega Pabón, 144 DPR 416 (1997). Aunque la pregunta a contestar era si una persona sin licencia para poseer un arma podía cometer el delito de posesión y portación ilegal, en esa ocasión expresamos dos asuntos pertinentes a la controversia que hoy atendemos. En primer lugar, aclaramos que "…aquél que esté autorizado a poseer y a quien se le ocupe un arma sobre su persona **no comete el delito de portación ilegal <u>si está portando el arma dentro del perímetro permitídole por la licencia</u>**". (Énfasis y subrayado suplido). Íd., pág. 422. En segundo lugar, reiteramos que:

> …en lo que respecta al citado Art. 8 de la Ley de Armas, conforme a lo resuelto en *Pueblo v. Vázquez Cintrón*, **el ciudadano que tenga licencia para poseer un arma de fuego infringirá dicho artículo siempre que <u>porte</u>, conduzca o transporte dicha arma de fuego <u>más allá de los límites de su residencia, negocio o finca, respectivamente</u>**…. (Énfasis y subrayado nuestro).

> Para incurrir en infracción al Art. 8 de la citada ley, supra, **la persona que no está autorizada a poseer un arma de fuego sólo debe portar el arma, no importa el sitio donde lo haga.** (Énfasis y subrayado suplido). Íd., págs. 423-424.

De esta manera, notamos que en todos los casos en que discutimos el delito de portación ilegal que se le imputaba a una persona con licencia bajo la Ley Núm. 17, supra, el énfasis estuvo en dónde ocurrió la presunta portación ilegal más allá de cómo el arma fue utilizada.

Nótese que en cada extracto citado de las decisiones que emitimos nada mencionamos en cuanto al uso que la persona le brindó al arma de fuego. De hecho, en ocasión que analizamos el delito de portación ilegal en conjunción con el delito disparar o apuntar armas de fuego tipificado en el Art. 32 de la derogada legislación de armas,[58] fuimos claros al establecer que <u>la portación ilegal era independiente a cómo la persona utilizaba el arma de fuego</u>. Así, por ejemplo, en <u>Pueblo v. Fonseca</u>, 79 DPR 36 (1956), expresamos que:

> [l]a portación ilegal de un arma de fuego, cargada, es un delito en el que se incurre independientemente de que se dispare o no el arma. **El acto de disparar ilegalmente es un delito en el que se incurre independientemente de que la persona que lo ejecuta, en las circunstancias indicadas en el art. 32, tenga o no licencia para portar el arma.** Son por lo

---

[58] El Art. 32 de la Ley Núm. 17, <u>supra</u>, tipificaba el delito de disparar o apuntar armas de fuego de la siguiente manera:

> [s]alvo en casos de defensa propia o de actuaciones en el desempeño de funciones oficiales, será culpable de delito menos grave toda persona que:
>
> (a) Voluntariamente dispare cualquier pistola, revólver u otra arma de fuego, escopeta de aire, o cualquier otra arma, o que arroje cualquier proyectil mortífero en un sitio público o en cualquier otro sitio donde haya alguna persona que pueda recibir daño, aunque no se cause daño a persona alguna; o
>
> (b) intencionalmente, aunque sin malicia apunte hacia alguna persona con un revólver, pistola o cualquier otra arma de fuego; o
>
> (c) dispare un arma de fuego sin causar daño a persona alguna mientras apunta intencionalmente, aunque sin malicia a una persona; o
>
> (d) cause daño corporal a alguna persona al disparar un arma de fuego mientras le apunta intencionalmente, aunque sin malicia, a cualquier persona. 25 LPRA ant. sec. 442.

tanto, violaciones de ley distintas y separadas. (Énfasis y subrayado suplido). Íd., pág. 39.[59]

### 4. Portación de armas bajo la Ley de Armas de 2000

Como vimos, en términos de portación de un arma de fuego, la derogada Ley de Armas establecía diferentes categorías que limitaban el lugar en que una persona podía portar su arma de fuego. Bajo la legislación de armas vigente – Ley Núm. 404-2000 – se eliminaron tales categorías de agricultor, comerciantes o jefes de familia, pero se mantuvo, en esencia, que toda persona interesada puede solicitar una licencia de armas. Así, la Ley de Armas faculta al Superintendente de la Policía de Puerto Rico a expedir "una licencia de armas a cualquier peticionario" que cumpla con los requisitos establecidos en el Art. 2.02.[60] La licencia de armas es definida por la propia ley como "…aquella licencia concedida por el Superintendente que autorice al concesionario para tener, poseer y transportar armas, sus municiones, y dependiendo de su categoría, portar armas de fuego, tirar al blanco o cazar".[61]

---

[59] Esta distinción fue eventualmente reiterada en González v. Tribunal Superior, 100 DPR 136, 143 (1971). La misma coincide con la distinción que hiciéramos, incluso, previo a la aprobación de la Ley Núm. 17, supra, en Pueblo v. Segarra, 36 DPR 116 (1926). Véase, además, Pueblo v. Álvarez, 70 DPR 830 (1950), caso en el cual nuevamente hicimos la distinción entre portación y uso al establecer que probado el hecho de que un acusado portaba ilegalmente un arma, la circunstancia de que él la usara en defensa propia no le exime de responsabilidad criminal alguna por dicha portación ilegal.

[60] Véase, Art. 2.02 de la Ley Núm. 404, supra. (25 LPRA sec. 456(a)).

[61] Art. 1.02(o) de la Ley Núm. 404, supra. (25 LPRA sec. 455(o)).

Como bien surge de la citada definición, la obtención de una licencia de armas no implica un permiso automático para la portación de un arma de fuego. La licencia se limita a brindar una autorización para que la persona pueda tener, poseer o transportar armas o sus municiones. No obstante, a esa licencia se le puede añadir alguna categoría bajo la cual la persona sí esté autorizada a portar su arma de fuego.[62] Así, por ejemplo, el Art. 2.05 de la Ley de Armas dispone que "[l]a sala con competencia del Tribunal de Primera Instancia concederá, … un permiso para portar… a toda persona poseedora de una licencia de armas que demostrare temer por su seguridad".[63]

En ese análisis sobre si debe conceder el permiso de portación, la Ley de Armas dispone que el Tribunal deberá tomar en cuenta los mismos requisitos establecidos para la concesión de una licencia de armas.[64] Contrario a lo que disponía el Art. 21, supra, de la derogada legislación de armas, su equivalente en la ley vigente – Art. 2.05, supra - no delimita qué información debe contener el permiso que finalmente conceda el tribunal. En otros términos, la ley no exige que se incluya el "tiempo, lugar y las circunstancias" en las que la persona puede portar su arma de fuego. Claro está, la ausencia de esa disposición en la ley, no impide que el tribunal, dentro del poder

---

[62] (Subrayado suplido). Véase, Art. 2.02(D)(2) de la Ley Núm. 404, supra. (25 LPRA sec. 456(a)).

[63] Art. 2.05(a) de la Ley Núm. 404, supra. (25 LPRA sec. 456(d)).

[64] Íd.

reconocido para evaluar y conceder el permiso de portación, imponga limitaciones razonables a tal portación.

Empero, contrario a lo que sucede con una persona particular interesada en tener un permiso de portación, los miembros de la Policía de Puerto Rico no tienen que acudir al tribunal a solicitar el mismo. Ello es así porque los policías forman parte de los funcionarios del orden público a los cuales la Ley de Armas expresamente les autoriza a portar un arma de fuego.[65] En virtud de esta autorización, el Superintendente es quien asigna un arma de reglamento a cada miembro de la Policía.[66] Por lo tanto, es este quien establece las limitaciones de cómo, cuándo y dónde los policías están autorizados a portar el arma asignada, en consonancia a lo establecido en la Ley de la Policía de Puerto Rico.[67]

Sobre este particular, la Ley de la Policía de Puerto Rico dispone que sus miembros conservarán todas sus facultades y atribuciones como policía de manera ininterrumpida en todo lugar y en todo momento. Así lo determinaron nuestros poderes políticos al incluir en la referida ley el siguiente lenguaje:

---

[65] Véase Art. 2.04 de la Ley Núm. 404, supra. (25 LPRA sec. 456(c)).

[66] Véase Art. 9.3 del Reglamento de Personal de la Policía de Puerto Rico, Reglamento Núm. 4216 de 11 de mayo de 1990.

[67] Ley Núm. 53-1996, Ley de la Policía de Puerto Rico. Entre las facultades, atribuciones y deberes que la mencionada ley le impone al Superintendente se encuentra determinar "…por reglamento la organización y administración de la Policía, las obligaciones, responsabilidad y conducta de sus miembros…". Art. 5(b) de la Ley Núm. 53, supra. (25 LPRA sec. 3104).

> [p]ara los efectos de cualquier intervención necesaria a los fines del cumplimiento de esta Ley, **los miembros de la Policía conservarán su condición como tales en <u>todo momento y en cualquier sitio</u> en que se encontraren dentro de la jurisdicción del Estado Libre Asociado de Puerto Rico, <u>aun cuando estuvieren francos de servicio</u>**. A esos efectos, tendrán todos los deberes y atribuciones que por esta Ley se imponen a los miembros de la Policía de Puerto Rico.[68]

Como podemos observar, los miembros de la Policía de Puerto Rico conservan todos sus deberes y atribuciones en "todo momento y en cualquier sitio" por si en algún momento surge la necesidad de intervenir para hacer cumplir los fines de la ley. Cónsono con esa política pública, el Superintendente promulgó la Orden General Núm. 2004-3 sobre <u>Normas y procedimientos para el uso, portación, mantenimiento y disposición de las armas de reglamento de la Policía</u> ("Orden General 2004-3").[69] Esta orden establece los límites y circunstancias bajo las cuales los policías están autorizados a portar sus armas de reglamento. Observamos que, conforme a lo establecido en la Ley de la Policía, la Orden General 2004-3 <u>ordena</u> a los policías a llevar su arma de reglamento en todo momento. En específico, la Sección E de la mencionada orden dispone lo siguiente:

> **[l]os miembros de la Policía portarán el arma de reglamento en todo momento, aun cuando estén**

---

[68] (Énfasis y subrayado suplido). Art. 10(f) de la Ley Núm. 53, <u>supra</u>. (25 LPRA 3109).

[69] Orden General 2004-3 del Superintendente de la Policía de Puerto Rico. Disponible en: http://www2.pr.gov/agencias/policiapr/OrdenesGenerales/Documents/Ordenes%20General%202004-3%20USO,PORTACION,%20MANTENIMIENTO,CAMBIO,.pdf. (última visita, 2 de junio de 2014).

**fuera de servicio**. Se exceptúa de esta norma las situaciones expuestas en las Secciones F, G, H de esta Orden.[70]

De esta manera, los policías conservan todas sus prerrogativas como policía en todo momento y en cualquier lugar, incluyendo cuando no estén en servicio. Así lo hemos avalado en el pasado bajo disposiciones similares incluidas en la hoy derogada ley de armas y en órdenes generales pasadas del Superintendente de la Policía. Véase, e.g., Reyes Salcedo v. Policía de Puerto Rico, 143 DPR 85, 103-104 (1997);[71] Sánchez Soto v. ELA, 128 DPR 497, 502 (1991).

Con este marco de referencia general sobre cómo se regula la portación de armas en nuestra jurisdicción en términos de una persona particular versus los miembros de la Policía de Puerto Rico, veamos ahora cómo la Ley de Armas específicamente tipifica el delito de portación ilegal.

5. **Delito de portación ilegal bajo la Ley de Armas de 2000**

En la Ley Núm. 404-2000 – el delito de portación de un arma de fuego sin licencia se encuentra tipificado en el Art. 5.04.[72] Para la fecha en que ocurrieron los hechos

---

[70] (Énfasis y subrayado suplido). Íd., Sección E, pág. 5.

[71] En *Reyes Salcedo*, por ejemplo, utilizamos el Manual sobre uso de armas de fuego de la Policía de Puerto Rico que establecía que "[l]os miembros de la Fuerza portarán el arma de reglamento en todo momento, aun cuando estén fuera de servicio". Capítulo II(F)(5), pág. 5. (Revisado en 1987).

[72] Art. 5.04 de la Ley Núm. 404, supra. (25 LPRA sec. 458c). Originalmente, este artículo correspondía al Art. 4.04, pero fue eventualmente re-enumerado como Art. 5.04. Véase, Ley Núm. 27-2002.

imputados al señor Negrón,[73] el referido artículo leía, en su parte pertinente, de la siguiente manera:

**Art. 5.04 – Portación y uso de un arma sin licencia**

> [t]oda persona que <u>transporte</u> cualquier arma de fuego o parte de ésta, <u>sin tener una licencia de armas</u>, o <u>porte</u> cualquier arma de fuego <u>sin tener su correspondiente permiso para portar armas</u>, incurrirá en delito grave y convicta que fuere, será sancionada con pena de reclusión por un término fijo de diez (10) años. De cometer cualquier otro delito estatuido mientras lleva a cabo la conducta descrita en este párrafo, no tendrá derecho a sentencia suspendida, a salir en libertad bajo palabra, o a disfrutar de los beneficios de algún programa de desvío, bonificaciones o alternativa a la reclusión reconocida en esta jurisdicción, debiendo cumplir en años naturales la totalidad de la pena impuesta. De mediar circunstancias agravantes, la pena fija establecida podrá ser aumentada hasta un máximo de veinte (20) años; de mediar circunstancias atenuantes, podrá ser reducida hasta un mínimo de cinco (5) años.
>
> …
>
> …
>
> Se considerará como agravante cualquier situación en la que el arma ilegal se utilice en la comisión de cualquier delito o su tentativa. ….[74]

Como bien surge del citado precepto, el delito de portación ilegal conlleva, como elemento esencial e imprescindible, una ausencia de autorización para la correspondiente portación del arma. Ahora bien, esa portación no autorizada puede darse bien porque la persona

---

[73] La redacción de este Art. 5.04 de la Ley de Armas de 2000 fue enmendada por la Ley Núm. 142-2013.

[74] (Énfasis y subrayado suplido). Art. 5.04 de la Ley Núm. 404, <u>supra</u>.

<u>transporte</u> un arma o parte de esta sin licencia, o bien

porque la persona <u>porte</u> un arma de fuego sin permiso de

portación. Respecto a qué implica el verbo "transportar",

la legislación nos define el mismo como:

> …la posesión mediata o inmediata de un arma, con
> el fin de trasladarla de un lugar a otro. Dicha
> transportación deberá realizarse por una persona
> con licencia de armas vigente, y el arma deberá
> estar descargada y ser transportada dentro de un
> estuche cerrado que no refleje su contenido, y
> el cual a su vez no podrá estar a simple
> vista.[75]

Mientras que el Art. 1.02, inciso s, nos define la

portación como:

> …la posesión inmediata o la tenencia física de
> un arma, cargada o descargada, sobre la persona
> del portador, entendiéndose también cuando no se
> esté transportando un arma de conformidad a como
> se dispone en este capítulo.[76]

Del texto del Art. 5.04 y de las reseñadas

definiciones pertinentes que provee la propia Ley de

Armas, surge que el delito de portación podría cometerse

bajo dos modalidades: (1) cuando una persona <u>porta</u> un arma

de fuego sin un permiso de portación; o (2) cuando

<u>transporta</u> un arma o parte de esta sin licencia. Como

parte de esa primera modalidad, se incluye el escenario en

que una persona porte el arma de fuego de manera contraria

a los términos impuestos en el correspondiente permiso de

portación. Es decir, una persona con permiso para portar

podría incurrir en el delito de portación ilegal si <u>porta</u>

su arma de fuego de manera contraria a los términos

---

[75] Art. 1.02(x) de la Ley Núm. 404, <u>supra</u>. (25 LPRA sec. 455(x)).

[76] Art. 1.02(s) de la Ley Núm. 404, <u>supra</u>. (25 LPRA sec. 455(s)).

establecidos en el permiso de portación. De igual forma, bajo la segunda modalidad una persona con licencia de armas podría incurrir en portación ilegal cuando transporta un arma o parte de esta de manera contraria a los términos que establece la ley. Esto es, si no está transportando la misma "dentro de un estuche cerrado que no refleje su contenido, y el cual a su vez no podrá estar a simple vista".[77]

Cónsono con lo anterior, la portación ilegal de un arma de fuego es un delito en sí, cuya consumación no depende del uso que se le brinde al arma.[78] Nótese que de las modalidades y escenarios explicados, una persona podría incurrir en el delito de portación ilegal sin necesidad de utilizar el arma. Así lo establece, de hecho, el lenguaje utilizado en la redacción del delito de portación ilegal, el cual se limita a reseñar el asunto de la portación o transportación sin mayor atención a qué uso se le brinde al arma de fuego. Esto porque para fines exclusivos del Art. 5.04, supra, lo que el legislador quiso tipificar como delito fue ese mero ejercicio de portar sin permiso o transportar un arma o parte de esta sin licencia. Es eso lo que se considera como un delito grave con una posible pena de reclusión de 10 años.[79]

---

[77] Art. 1.02(x) de la Ley Núm. 404, supra.

[78] Ello, cónsono con lo que en la sección anterior reseñáramos de nuestras expresiones en Pueblo v. Fonseca, supra. Véase, escolio número 58.

[79] A esa pena fija de 10 años de reclusión, la Ley Núm. 160-2013 añadió "sin derecho a sentencia suspendida, a salir en libertad bajo palabra,

Ciertamente, el artículo hace referencia al uso que se le brinda a esa arma de fuego que se porta de manera ilegal, pero únicamente para fines de limitar la aplicación de penas alternativas de reclusión y otros privilegios y para establecer penas agravadas. En lo que concierne a la exclusión de penas alternativas de reclusión y otros privilegios, por ejemplo, vemos que el artículo menciona lo siguiente en su parte aquí pertinente:

> [d]e cometer **cualquier otro delito** estatuido mientras lleva a cabo la conducta descrita en este párrafo, no tendrá derecho a sentencia suspendida, a salir en libertad bajo palabra, o a disfrutar de los beneficios de algún programa de desvío, bonificaciones o alternativa a la reclusión reconocida en esta jurisdicción, debiendo cumplir en años naturales la totalidad de la pena impuesta.[80]

Es decir, si la persona que incurre en el delito de portación ilegal, además comete cualquier otro delito, esta no tendrá derecho a los privilegios que especifica el artículo. Importante notar que ese "cualquier otro delito" podría cometerse con el arma que se porta ilegalmente o no. Ahora, si la persona, en efecto, comete ese otro delito utilizando el arma que portaba ilegalmente, se le aplicarán entonces las penas agravadas que establece el

---

o a disfrutar de los beneficios de algún programa de desvío, bonificaciones o alternativa a la reclusión reconocida en esta jurisdicción, debiendo cumplir en años naturales la totalidad de la pena impuesta". Anterior a la aprobación de la mencionada ley, estas consecuencias procedían únicamente cuando se cometía algún otro delito mientras se portaba el arma sin permiso o transportaba el arma o parte de esta sin licencia. Bajo la redacción actual, sólo bastaría que incurra en uno de los dos escenarios mencionados para que la persona se vea privada de tales beneficios.

[80] (Énfasis y subrayado suplido). Art. 5.04 de la Ley Núm. 404, supra.

artículo. Al respecto, el Art. 5.04 menciona, en su parte

aquí pertinente:

> [d]e mediar circunstancias agravantes, la pena fija establecida podrá ser aumentada hasta un máximo de veinte (20) años; de mediar circunstancias atenuantes, podrá ser reducida hasta un mínimo de cinco (5) años.
>
> ….
>
> **Se considerará como agravante cualquier situación en la que el arma ilegal se utilice en la comisión de cualquier delito o su tentativa.**[81]

De esta manera, no hay duda que la consumación del

delito de portación ilegal, no depende del uso que se le

brinde al arma de fuego. Por lo tanto, ese uso no

corresponde a un elemento de tal delito. Esta distinción e

independencia de la conducta que constituye portación

ilegal versus el uso que se le brinda a tal arma de fuego

ilegal, ha sido sostenida, incluso, por la propia Asamblea

Legislativa cuando se ha planteado la posibilidad de

enmendar el texto del Art. 5.04 de la Ley de Armas.

A modo de ejemplo, hallamos el Proyecto de la Cámara

4641 que eventualmente se convirtió en la Ley Núm. 137-

2004. Este proyecto, entre otros asuntos, proponía incluir

como un elemento del delito de portación ilegal la

comisión de "cualquier delito estatuido".[82] Es decir, se

---

[81] (Énfasis suplido). Íd.

[82] El texto propuesto por el Proyecto de la Cámara 4641 leía de la manera siguiente:

> [t]oda persona que transporte cualquier arma de fuego o parte de ésta sin tener licencia de armas, o porte cualquier arma de fuego sin tener su correspondiente permiso para portar armas, **y mientras lleve a cabo**

propuso que para configurarse el delito de portación ilegal, la persona, además de portar el arma sin su correspondiente permiso, debía incurrir en la comisión de algún delito. No obstante, como parte del estudio y evaluación de esta propuesta, la Comisión de lo Jurídico de la Cámara de Representantes recomendó no alterar la redacción de la primera oración del Art. 5.04. Sobre este particular, expresó lo siguiente:

> [s]e corrige la enmienda propuesta, de modo que se preserven como delitos graves: i) transportar armas sin licencia y ii) portar armas sin permiso de portación. Se establece, además que, de cometerse cualquier otro delito estatuido mientras incurre en estas conductas, la parte convicta no tendrá derecho a sentencia suspendida, a salir en libertad bajo palabra, o a disfrutar de los beneficios de algún programa de desvío, bonificaciones o alternativa a la reclusión, debiendo cumplir en años naturales la pena impuesta.

Esta distinción entre la conducta que constituye portación ilegal y el uso que la persona le dio al arma ilegalmente portada, es cónsona con las disposiciones que el legislador incluyó en la propia Ley de Armas. Esto porque ese uso ilegal está cobijado bajo las disposiciones del Art. 5.15, el cual dispone lo siguiente:

> A. Incurrirá en delito grave con pena de reclusión por un término fijo de cinco (5) años, toda persona que, salvo en casos de defensa propia o de terceros, o de actuaciones en el desempeño de funciones oficiales o actividades legítimas de deportes:
>
>> 1. Voluntariamente dispare cualquier arma en un sitio público o en cualquier otro

---

**dicha conducta cometa cualquier delito estatuido** incurrirá en delito grave…. (Énfasis y subrayado nuestro). P. de la C. 4641 de 4 de mayo de 2004.

sitio donde haya alguna persona que pueda sufrir daño, aunque no le cause daño a persona alguna, o

2. Intencionalmente, aunque sin malicia, apunte hacia alguna persona con un arma, aunque no le cause daño a persona alguna.

De mediar circunstancias agravantes, la pena establecida podrá ser aumentada hasta un máximo de diez (10) años; de mediar circunstancias atenuantes, podrá ser reducida hasta un mínimo de un año… .

Con este marco legal como norte, procedemos a evaluar y resolver los méritos de la controversia ante nuestra consideración.

### III

De los hechos pertinentes alegados por el Ministerio Público, observamos que el señor Negrón portaba su arma de reglamento de la Policía de Puerto Rico en un negocio ubicado en San Germán. Mientras se encontraba allí, este la utilizó para apuntar y disparar contra el vehículo en el que se encontraba el señor Rosado Capeles, quien resultó herido con tres impactos de bala.[83] Por tales hechos, el Ministerio Público presentó tres acusaciones en contra del señor Negrón: (1) una acusación por el delito de tentativa de asesinato; (2) una acusación por el delito de portar y usar un arma de fuego sin licencia; y (3) una acusación por el delito de apuntar o disparar con un arma de fuego. En ese contexto, la controversia que hoy atendemos se limita a determinar si, en efecto, procede tal acusación presentada por el delito de portar y usar un

---

[83] Véase escolio número 7 y texto citado.

arma de fuego sin licencia, según tipificado en el Art. 5.04 de la Ley de Armas, supra.

En esta tarea, conviene recordar que el presente caso llega a nuestra atención como resultado de una petición de desestimación presentada por el señor Negrón al amparo de la Regla 64(p) de Procedimiento Criminal, supra. Por lo tanto, conforme a lo discutido anteriormente, debemos evaluar si el señor Negrón logró demostrar que la determinación de causa para acusar por el delito de portación y uso de un arma de fuego sin licencia fue contraria a la ley y a derecho.[84] Específicamente, en lo concerniente a si en la vista preliminar el Ministerio Público incumplió su responsabilidad probatoria de presentar evidencia admisible en un juicio sobre todos los elementos del referido delito.[85] Sobre este particular, anteriormente mencionamos que el delito de portación ilegal tipificado en el Art. 5.04 de la Ley de Armas, supra, se produce bajo dos modalidades: (1) cuando una persona porta un arma de fuego sin un permiso de portación o; (2) cuando transporta un arma o parte de esta sin licencia.[86]

En el caso que se impute el delito de portación ilegal bajo la primera modalidad, el Ministerio Público tiene dos vías para demostrar el mismo. *Primero*, podría

---

[84] Véase Parte II, sección A, inciso 2 de esta Opinión.

[85] Véase Parte II, sección A, inciso 1 de esta Opinión.

[86] Véase Parte II, sección B, inciso 5 de esta Opinión.

presentar evidencia de que, en efecto, la persona estaba portando un arma de fuego sin un permiso a tales efectos. En ese caso, la evidencia debe estar dirigida a demostrar la portación del arma y la ausencia de permiso. *Segundo*, podría presentar evidencia de que aun cuando la persona contaba con un permiso de portación, esta no la <u>portó</u> según los términos autorizados. Por ejemplo, no la portó en el lugar en el que se le autorizó. En tal caso, correspondería presentar evidencia que demuestre la portación del arma y la violación a tal condición. En ese análisis, enfatizamos que el <u>uso</u> que se le brinde al arma ilegalmente portada es impertinente para efectos de la consumación del delito de portación ilegal.

En el caso de autos, la denuncia presentada contra el señor Negrón por alegada infracción al Art. 5.04 establecía que este portaba un arma de fuego "…sin haber obtenido previamente licencia según lo dispuesto por la Ley para la portación o transportación de la misma…".[87] A fin de sostener tal denuncia, durante la vista preliminar el Ministerio Público se limitó a presentar los testimonios del señor Rosado Capeles, el perjudicado, y de dos agentes que intervinieron la noche del incidente. Como reseñáramos, del testimonio de ambos agentes surgió que el señor Negrón era miembro de la Policía de Puerto Rico, por lo que estaba autorizado a portar su arma de reglamento

---

[87] Véase escolio número 7 y texto citado.

"en cualquier sitio" y "todo el tiempo".[88] A pesar de ello, el magistrado halló causa probable para acusar y el Ministerio Público presentó la acusación por el Art. 5.04. En esta expuso que el señor Negrón "portó [su arma de reglamento] en circunstancias no autorizadas por dicho permiso", ya que "…**utilizó** la misma para **dispararle** en más de tres ocasiones a un ciudadano".[89]

Ante tales alegaciones y la evidencia presentada, no hay duda que el señor Negrón logró demostrar que el Ministerio Público no cumplió con la carga probatoria requerida durante la determinación de una causa probable para acusar en lo que respecta al delito tipificado en el Art. 5.04 de la Ley de Armas, supra. De la evidencia desfilada durante la vista preliminar, lo único que se desprende es que alegadamente el señor Negrón utilizó su arma de reglamento – la cual está autorizado a portar en todo lugar y en todo momento – para apuntar y disparar contra el vehículo en el que se transportaba el señor Rosado Capeles. Tal conducta, *aunque similar*, no es paralela a los hechos constitutivos del delito que el legislador tipificó bajo el mencionado Art. 5.04. Por lo tanto, el Ministerio Público falló en presentar *alguna evidencia* relacionada con los elementos específicos del delito de portación y uso de un arma de fuego sin licencia. Siendo así, no hay duda de que hubo ausencia

---

[88] Véase escolios número 9 y 10 y texto citado.

[89] Véase escolio número 12 y texto citado.

total de prueba durante la determinación de causa probable. Como consecuencia, concluimos que procede la desestimación del cargo.

Bajo ninguna circunstancia, la determinación que hoy alcanzamos debe entenderse como una licencia irrestricta a los miembros de la Policía de Puerto Rico para utilizar su arma de reglamento cuando quieran y como quieran libre de responsabilidad penal. Lo que hoy aclaramos es que bajo el ordenamiento jurídico vigente a los policías se les autoriza a portar su arma de reglamento en todo momento y en cualquier lugar. Indudablemente, tal autorización para portar su arma de reglamento, no equivale a una autorización para utilizarla en violación a la ley. Es por ello que, si en su día se demuestra que, en efecto, el señor Negrón utilizó su arma de reglamento para disparar contra el señor Rosado Capeles, este enfrentará las correspondientes consecuencias penales establecidas para una tentativa de asesinato y por infracción al Art. 5.15 de la Ley de Armas, supra.

**IV**

Por los fundamentos que anteceden, revocamos la Sentencia dictada por el Tribunal de Apelaciones. En consecuencia, ordenamos la desestimación del cargo presentado contra el Sr. Elvin Negrón Nazario por el delito de portación y uso de un arma de fuego sin licencia, tipificado en el Art. 5.04 de la Ley de Armas, supra. No obstante, se devuelve el caso al Tribunal de

Primera Instancia para la continuación de los procedimientos judiciales concernientes a los cargos por tentativa de asesinato e infracción al Art. 5.15 de la Ley de Armas, supra.

Se dictará sentencia de conformidad

                                        Edgardo Rivera García
                                          Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico                              *Certiorari*

    Recurrido

                              CC-2012-1024

      v.

  Elvin Negrón Nazario

    Peticionario


SENTENCIA


En San Juan, Puerto Rico, a 9 de octubre de 2014.

Por los fundamentos expuestos en la Opinión que antecede, revocamos la Sentencia dictada por el Tribunal de Apelaciones. En consecuencia, ordenamos la desestimación del cargo presentado contra el Sr. Elvin Negrón Nazario por el delito de portación y uso de un arma de fuego sin licencia, tipificado en el Art. 5.04 de la Ley de Armas de Puerto Rico, Ley Núm. 404-2000. (25 LPRA sec. 458c). No obstante, se devuelve el caso al Tribunal de Primera Instancia para la continuación de los procedimientos judiciales concernientes a los cargos por tentativa de asesinato e infracción al Art. 5.15 de la Ley de Armas, supra. (25 LPRA sec. 458n).

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal Supremo. La Jueza Asociada señora Pabón Charneco no intervino.


                Aida Ileana Oquendo Graulau
                Secretaria del Tribunal Supremo